IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WESTROCK COMPANY, VICTORY PACKAGING, LP, and COMERCIALIZADORA VICTORY S. DE R.L. DE C.V. <br><br> *Plaintiffs*, <br><br> v. <br><br> JASON DOUGLAS PLAYER, PERLA ALEXANDRA YU HERNANDEZ, GROUP-O ANALÍTICA NORTH AMERICA, S. DE R.L. DE C.V., GROUP O, INC., and DYLAN GROUP LLC <br><br> *Defendants*. | CIVIL ACTION NO. 4:22-cv-02646 |

## PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs WestRock Company, Victory Packaging, LP, and Comercializadora Victory S. de R.L. de C.V. (collectively, "WestRock" or "Plaintiffs"), file this amended complaint against Defendants Jason Douglas Player ("Player"), Perla Alexandra Yu Hernandez ("Yu") (collectively, the "Former Employee Defendants"), Group O, Inc., Group-O Analítica North America, S. de R.L. de C.V., and Dylan Group LLC (collectively with Group O Mexico and Group O, Inc., "Group O") and allege as follows:

## NATURE OF THE ACTION

1. This case involves misappropriation of confidential proprietary information belonging to WestRock (including customer information, pricing, and product specifications) by its former sales representatives, Player and Yu. For months prior to their departure, they surreptitiously funneled business and confidential WestRock information to Group O, a competitor in the commercial packaging industry. After illegally exploiting WestRock during their

employment, Player and Yu left WestRock for Group O, where they remain today. On information and belief, Group O has tried this scheme of misappropriation and corporate disloyalty with others.

2.      Recent analyses of Player's and Yu's computer and email activity have revealed some of their brazen, tortious activity while under WestRock's employ. For example, Player apparently worked for *months* to divert customers away from his employer and to Group O—with the knowledge and participation of Group O personnel in Texas and Mexico who have acknowledged using information furnished by Player during his tenure at WestRock. In one instance, Player began moving a WestRock customer's business to Group O, all the while misrepresenting the facts to Player's WestRock supervisor to cover his tracks.

3.      Similarly, Yu began assisting Group O's competing business weeks before her departure from WestRock. By way of example, she repeatedly accessed a "Group O Sales" email account using her WestRock computer, and she forwarded key customer information from WestRock (including computer assisted drawing files, cost information, and other customer information) from her WestRock account to her personal email in preparation for her departure.

4.      Player and Yu had no authorization, legitimate business reason, or moral justification for their misuses of WestRock's confidential and trade secret information and their protracted double-crossing of their employer. And Group O willfully facilitated, encouraged, and participated in Player's unethical and tortious behavior against its competitor, WestRock.

5.      WestRock has already lost business and confidential information to Group O due to Defendants' coordinated misconduct. On information and belief, Group O's pattern of inducing disloyalty and misappropriation by departing WestRock employees extends further than just Player

1253222.1

and Yu.[1] WestRock brings this suit to halt Defendants' scheme, find out the full extent of the harm done, and obtain all appropriate relief.

## THE PARTIES

6.      Plaintiff Victory Packaging, LP ("Victory Packaging") is a Texas limited partnership with its principal place of business at 8440 Tewantin Drive, Houston, Texas, 77061. Victory Packaging is a wholly-owned subsidiary of WestRock.

7.      Plaintiff Comercializadora Victory S. de R.L. de C.V. ("Victory Mexico", and collectively with Victory Packaging, "Victory") is a corporation organized under the law of Mexico with its principal place of business in Monterrey, Mexico. Victory Mexico is a wholly-owned subsidiary of WestRock.

8.      Plaintiff WestRock Company is a Delaware corporation with its principal place of business at 1060 Abernathy Road NE, Atlanta, Georgia, 30328. WestRock is the ultimate parent company of Victory Packing and Victory Mexico.

9.      Defendant Jason Player is an individual residing in El Paso, Texas. On information and belief, he may be served at 11604 Rufus Brijalba Drive, El Paso, TX 79936. From March 2014 to on or about April 4, 2022, Player was employed as a sales account executive at Victory Packaging, focusing on sales in Texas and Mexico. Player has already filed an appearance in this matter.

10.     Defendant Perla Alexandra Yu Hernandez is a Mexican national individual residing in Ciudad Juarez, Chihuahua, Mexico, at the address Misión San Felipe 8824, Residencial Misión

---

[1] WestRock's investigation continues, and Plaintiffs reserve their right to add additional individual defendants as discovery proceeds in this litigation.

de los Lagos, Juárez, Chihuahua 32668 Mexico. From October 2007 to on or about March 25, 2022, Yu was employed as a sales representative at Victory Mexico.

11.    Defendant Group O, Inc. is an Illinois corporation with its principal place of business in Milan, Illinois. Group O, Inc. is a privately-owned, $900 million packaging solutions enterprise, with business operations, and locations in, among other places, Texas and Mexico. Group O, Inc. may be served via its registered agent, Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703. Group O has been served with summons in this matter.

12.    Defendant Group-O Analítica North America, S. de R.L. de C.V. ("Group O Mexico") is a corporation organized under the laws of Mexico that lists its principal place of business as Rio Lancaster No. 821 Centro Industrial Juárez, Ciudad Juárez, Chihuahua 32695, Mexico. On information and belief, Group O Mexico is a subsidiary of Group O, Inc. Group O Mexico has waived service of summons in this matter.

13.    Defendant Dylan Group, LLC ("Dylan Group") is a limited liability company incorporated in Michigan that lists its registered agent as Michael D. Cobane, 1900 W. Big Beaver Rd., Suite 203, Troy, MI. On information and belief, Dylan Group is a Group O affiliate doing business in Texas and Mexico, and it is the Group O entity claiming to employ Defendants Player and Yu in their work for Group O.

## JURISDICTION AND VENUE

14.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to WestRock's claims arising under the laws of the United States that they form part of the same case or controversy. The Court further has subject matter jurisdiction pursuant to

4

28 U.S.C. § 1332(a), as the matter is between citizens of different states and citizens or subjects of a foreign state and exceeds the sum or value of $75,000.

15.     The Court has personal jurisdiction over Player because Player is a resident and domiciliary of the State of Texas. In addition, the claims asserted herein arise out of the acts the Former Employee Defendants committed in the State of Texas and/or purposefully directed at the State of Texas, in this district, where Victory has its main offices and keeps its computer servers hosting most of Victory's sensitive files and information.

16.     The Court has personal jurisdiction over the Group O Defendants because the claims asserted herein arise out of the acts that Group O committed in the State of Texas and/or purposefully directed at the State of Texas, as described throughout the factual allegations of this complaint. All Defendants have minimum contacts with this state such that the exercise of jurisdiction would not violate due process.

17.     For example, on information and belief, Group O intentionally sought out Player in Texas, with full knowledge of Player's Texas location and base of operations, Player's employment with and duties to Victory Packaging in Texas, and Player's access to confidential WestRock information including, among other things, customers operating in Texas and Mexico. Group O went on to engage and work with the Former Employee Defendants during their Victory employment to obtain and use the information they furnished pertaining to WestRock customers in Texas and Mexico—including Victory Packaging's confidential and trade secret information hosted on Victory's Houston, Texas-based servers—offering the Former Employee Defendants present or deferred compensation in return for their services to Group O. The Group O entities accomplished this through their employees and agents working from Houston and Mexico who performed these actions in their capacities as employees and agents for Group O Mexico and

1253222.1

Group O, Inc. During the period of Player's double-dealing, Player, working principally from his location in Texas, acted with apparent and actual authority as a Group O representative and agent in engaging with customers and vendors in Texas and Mexico to benefit Group O's business. Following the conclusion of Player's employment with Victory Packaging, Player, working as an agent for Group O, continued disclosing and using confidential and trade secret WestRock information for purposes of unfair competition aimed at customers in Texas, in knowing contravention of his continuing contractual obligations to Victory Packaging in Texas.

18.    For purposes of jurisdiction and venue in this case, the actions of Group O Mexico and Dylan Group may be attributable to Group O Mexico and Group O, Inc. During all relevant times, Group O Mexico and Dylan Group acted as mere instrumentalities for Group O Mexico and Group O, Inc.'s business conducted in Texas and in Mexico. On information and belief, the Group O Defendants share business addresses with each other and operate as mere divisions of Group O. For example, the employees and agents of Group O Mexico and Dylan Group are considered and treated as Group O, Inc. employees; they identify themselves as Group O representatives; they are furnished with Group O, Inc. equipment and accounts; and Group O, Inc. maintains control over the activities of these divisions and their agents.

19.    Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b)(2) because Harris County, the location of Victory Packaging's principal place of business, is the county in which a substantial part of the events giving rise to the claim occurred. In addition, on information and belief, Group O maintains within this district at least one of its business specialists and agents who participated in the complained-of acts at issue in this case.

20.    Venue is additionally proper in the Southern District of Texas as to Player because the valid and enforceable 2014 Employment Agreement between Player and Victory

Packaging (the "Player Employment Agreement") includes a venue provision identifying the United States District Court for the Southern District of Texas, Houston Division, in which "[Player] unconditionally consents and submits to the jurisdiction of such courts." *See* Ex. B (Player Employment Agreement).

21.    In the alternative, venue is proper as to each Defendant for this district pursuant to 28 U.S.C. § 1391(b)(3).

22.    Furthermore, a common nucleus of operative facts exists with claims against Defendants for which venue properly lies in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A.    WestRock's Business**

23.    This case is about the theft of trade secrets, including customer lists and engineering specifications, and the poaching of employees in the highly competitive packaging industry.

24.    WestRock is a multinational provider of sustainable fiber-based paper and packaging solutions. WestRock operates in North America, including in multiple U.S. States and in Mexico, South America, Europe, Asia and Australia.

25.    WestRock's business includes the sale of a variety of packaging products, such as boxes, packaging tape, bubble/foam/poly bags, and other packaging equipment and supplies to customers nationally and internationally.

26.    Victory is a packaging solutions company founded in 1976 and based in Houston. Victory has more than 65 warehouses and distribution facilities in the U.S., Canada and Mexico. Victory Packaging and its Mexican affiliate, Victory Mexico, were acquired by WestRock in 2018 as part of WestRock's acquisition of KapStone Paper and Packaging Corporation.

1253222.1

**B.      WestRock's Efforts to Protect Its Confidential Information and Trade Secrets**

27.      WestRock invests significant time, resources, and money in protecting its confidential information and trade secrets.

28.      Access to WestRock's systems, including email and shared drives, is password protected and controlled by a central administrator. Employees have differing levels of access based on their location and their position and responsibilities.

29.      WestRock's sales teams receive automated reports regarding their business and receive access to a password protected business intelligence site in order to manage their business effectively. WestRock limits access to the password protected business intelligence site to those on the sales team and a few support personnel.

30.      An employee's access to WestRock's systems, files, and physical spaces is withdrawn upon termination.

31.      When employees give notice of impending separation, management assesses risk and determines whether the employee will continue to have access to WestRock's systems during the notice period, or whether the notice period will be abbreviated or eliminated, and the employees access be immediately cut off.

32.      WestRock's employees are subject to strict agreements and policies to not disclose confidential information or trade secrets and are generally required to sign confidentiality agreements.

33.      WestRock's employees are required to return all devices, documents, and information upon request and/or termination.

34.      WestRock's employee policies and agreements impose confidentiality and safeguarding obligations, in addition to those imposed by contract and by the law.

35.    WestRock conducts training for its employees on safeguarding WestRock's confidential information and trade secrets, acceptable uses of WestRock technology and information, and avoiding conflicts of interest with WestRock's business.

36.    When WestRock identifies a threat of misappropriation of its confidential information or trade secrets, the threat is dealt with quickly, including through litigation when necessary.

37.    WestRock derives a significant benefit from its confidential information and trade secrets and will suffer a significant detriment from their misappropriation.

38.    WestRock owns and/or lawfully possesses confidential information and trade secrets. None of the Defendants own, lawfully possess, or have any right or authorization to use any of WestRock's confidential information or trade secrets.

**C.    Player and Yu's Current Employer, Group O**

39.    Group O is a WestRock competitor operating in the packaging solutions and supply chain industry. On information and belief, Group O, Inc.'s headquarters are in Illinois; however, it has facilities across the United States (including Texas), and it also maintains presence and business within Mexico, with the assistance of its Mexican affiliate, Group O Mexico.

40.    Over the past few years, several former WestRock employees have joined Group O, Inc. and Group O Mexico.

41.    On information and belief, and while only recently discovered, Group O has approached several WestRock employees during the last several months to join Group O and take WestRock customer information with them.

**D.    WestRock's Confidentiality Agreements with Player and Yu**

42.    On August 13, 2020, Player electronically signed the WestRock Employee Agreement Regarding Confidentiality, Inventions, Works, Computer Software, and Permissions

1253222.1

(the "Confidentiality Agreement"). A true and correct copy of the Confidentiality Agreement and Player's digital acknowledgment thereof are collectively attached hereto as Exhibit A.

43.    On January 2, 2019, Yu electronically signed a Spanish version of the Confidentiality Agreement.

44.    In the Confidentiality Agreement, Player and Yu expressly acknowledged that WestRock's business relies upon use and protection of its confidential information and trade secrets, "and that improper use or disclosure will harm WestRock and others."

45.    The Confidentiality Agreement sets out that WestRock would disclose or make available to the Former Employee Defendants "Confidential Information," which is defined to include "information regarding customers or vendors of WestRock and the terms of those relationships, the terms and conditions upon which WestRock employs its employees and independent contractors, marketing and / or business plans and strategies, financial reports and analyses, manufacturing processes and procedures, technology used in those manufacturing processes and procedures, research and development, and information provided to WestRock by third parties under a duty to maintain the confidentiality of such information."

46.    Player and Yu agreed, in relevant part, as follows regarding WestRock's Confidential Information:

> **2.2    Duty to Protect Confidential Information.** During my employment by WestRock, and for a period of five (5) years after cessation of that employment for any reason (the "Confidentiality Period"), I will not, directly or indirectly, divulge or make use of any Confidential Information of WestRock other than in the performance of my duties for WestRock and for the benefit of WestRock. While employed by WestRock, I will make all reasonable efforts to protect and maintain the confidentiality of the Confidential Information of WestRock and follow all policies and procedures established by WestRock with respect to its Confidential Information. In the event that I become aware of any unauthorized use or disclosure of the Confidential Information during the Confidentiality Period, whether intentionally or by accident, I will promptly notify WestRock. This Agreement does not limit the remedies available to WestRock under common, civil or statutory law

as to trade secrets or other types of confidential information, which may impose longer duties of not to use or disclose such information.

*See*, *e.g.*, Ex. A at § 2.

47.     Player and Yu expressly agreed that "[v]iolation or threatened violation of any provision of [the Confidentiality] Agreement may cause immediate and irreparable harm to WestRock. In such event, in addition to any disciplinary action, including termination, that WestRock may impose, WestRock is entitled to equitable and injunctive relief (for example, a court order compelling compliance or prohibiting activity) without having to post bond or demonstrate inadequacy of money damages. Such relief shall be in addition to any other relief available to WestRock." *See*, *e.g.*, *id.* at § 10.

48.     As part of WestRock's provision of certain Confidential Information to its employees, and the Employee's agreement to protect such information, the Confidentiality Agreement further included nonsolicitation obligations. For example, Player and Yu agreed that, for a similar two-year period, they would not solicit or induce any employee or independent contractor of WestRock with whom they had material business-related contact during the past two years, to terminate or lessen such employment or contract with WestRock. *See*, *e.g.*, *id.* at § 8; *see also* Ex. B (Player Employment Agreement).

**E.     Player's and Yu's Job Duties and Access to WestRock's Confidential Information and Trade Secrets**

49.     On or about March 31, 2014, Player was hired as a sales account executive for Victory Packaging. *See* Ex. B (Player Employment Agreement). In this position, Player acted as an agent for Victory Packaging and was responsible for managing existing customer accounts and establishing new accounts by prospecting and engaging new customers. Player's employment with Victory Packaging was contingent on his promises to be loyal to his employer, to follow company

policies, to avoid conflicts of interest, and to protect Victory's customer lists, information, and pricing, among other confidential information. *See generally id.*

50.    On or about October 18, 2007, Yu was hired as a sales representative by Victory Mexico and executed an employment agreement. In this position, Yu acted as an agent for Victory Mexico and was also responsible for managing existing customer accounts and establishing new accounts by prospecting and engaging new customers.

51.    As key Victory sales representatives, Player's and Yu's responsibilities required access to, among other data, WestRock's internal product information, customer preferences, contract information, and pricing information, in order to address inquiries from prospective customers, as well as to maintain existing customer accounts. Player and Yu had to manage customer engagements through the sales lifecycle[2] to ensure that contractual obligations were met and to enable customer satisfaction. Player's role further required that he develop and execute account strategies for new and existing customers.

52.    Player and Yu had access to other WestRock confidential information and trade secrets, including without limitation:

a.    WestRock's communications with customers;

b.    Compilations of WestRock's customer information, volumes, and contract dates;

c.    Details of WestRock's contractual arrangements with its customers and suppliers, including contractual terms, contract pricing, expiration dates, renewal information, tonnage/volume preferences, and more;

d.    WestRock's costs, margins, profits, discounts, and other financial information;

e.    WestRock's design drawings, engineering files, and specifications for customer packaging solutions; and

---

[2] The sales cycle of a purchase order can range from four to ten weeks or longer (between placing of the purchase order to the customer's receipt of the material). The level of customization of the product (such as customized printing) can extend the time frame for delivery. External factors such as supplier inventory and supply chain problems can also extend the length of the cycle.

1253222.1

f.    WestRock's projections concerning sales, purchases, revenue, profit, margins, and more.

53.    WestRock devoted time and resources to develop this base of confidential customer and business information over the span of many years, and it is valuable to the company. For example, WestRock's customer lists were created over time and with extensive effort by WestRock team members. WestRock's customers also often share their own confidential inventory or product information to facilitate WestRock's provision of products and services, and WestRock frequently has obligations to maintain the confidentiality of those communications and customer details. WestRock's pricing and financial information are also very important to WestRock's ability to compete in the marketplace. Similarly, WestRock's design drawings and engineering files are items that in many cases are generated through the skills and efforts of WestRock's engineering team.

**F.    Player and Yu Depart from WestRock in March-April 2022.**

54.    On or about March 25, 2022, Yu resigned from employment with Victory. On or about April 5, 2022, Player resigned from employment with Victory as well.

55.    WestRock has since learned that Yu and Player each joined WestRock's competitor, Group O. On information and belief, Yu and Player have been servicing or attempting to draw WestRock's customers away from WestRock, including those whom each Defendant had served on behalf of WestRock, while in WestRock's employ in the same geographic region.

**G.    Player Began Transferring WestRock Customers to Group O While Still Working for WestRock.**

56.    For months during his employ at WestRock, Player worked to transfer WestRock's hard-won customer information and relationships to WestRock's competitor, Group O.

1253222.1

57.    Player's double-dealing to illegally poach WestRock's customers to purchase from Group O began months before his announced resignation from WestRock. Based on a review of Player's WestRock-issued company email, Player had been shifting WestRock's customer business and relationships to Group O and conducting business on behalf of Group O—*even appearing in Group O team emails*—via his personal Gmail account, jasondplayer@gmail.com. Key Group O leadership and other Group O agents were included in relevant communications, were fully aware of Player's double-dealing, and directed and encouraged the continued wrongdoing and acts of unfair competition. Player's willful and malicious activity dates back to at least May 2021, eleven months before his actual departure from WestRock.

58.    This improper overlap, in which Player was employed by WestRock but at the same time working on behalf of Group O's interest, and in cooperation with Group O employees and agents, is documented in Player's own emails. Recovered emails depict that Player included Group O employees, such as Group O sales executive Jorge Macias, and others in his WestRock customer correspondence. Indeed, Player integrated his personal Gmail account into his WestRock correspondence, for example, by adding his Gmail address as a "cc" in his WestRock customer correspondence, or by asking customers in the text of his message to substitute his Gmail address for his WestRock address in future emails.

59.    On information and belief, Player's actions were calculated to hide the fact that he was working for the benefit of Group O while still employed by WestRock. The following email examples help illustrate Player and Group O's extensive collaboration.

1253222.1

**Group O personnel acknowledge receiving and using former WestRock customer information that Player provided.**

60.     In one example of Player's misappropriation and double-dealing revealed by WestRock's forensic analysis, a contact with former WestRock customer, Customer A[3], forwarded an email chain to Player's WestRock address in August 2021. In that email chain, Sean Kelly (on information and belief, Group O's Houston-based sales executive) informed the Customer A representative on August 18, 2021, that he had "received your contact information from Jason [Player]," in relation to what appears to be Group O's work on a proposal to Customer A. *See* Ex. C.

61.     As Player had acknowledged during his tenure at WestRock, WestRock's "Confidential Information" includes "information regarding customers or vendors of WestRock and the terms of those relationships," and Player had a duty *not* to use such information other than in his duties for Westrock or for WestRock's benefit. Player's collaboration with Group O instead violated his duties to his then-employer WestRock.

62.     Key players at Group O, including Sean Kelly and Group O Mexico's leader Mike Holzwarth, permitted and encouraged Player in his commission of the wrongful acts described in this Complaint, with knowledge that Player's double-dealing and provision of WestRock information ran afoul of his employment and confidentiality obligations to WestRock.

63.     On information and belief, Jason Player's provision of WestRock customer lists to Group O have further assisted Group O in its efforts to steal business from Plaintiffs.

---

[3] Plaintiffs shall provide names of current and former WestRock Customers A–I following entry of a protective order.

**Player leverages his WestRock employment to move customers to Group O.**

64.    In another example, Victory Mexico had a customer, Customer B, with consistent annual sales dating back to 2014-2015. The Customer B account was assigned to Jason Player in approximately 2016.

65.    Customer B's plant manager has since informed WestRock personnel that Player, while still working for WestRock in November 2021, quoted prices to Customer B on Group O's behalf for several of the products that WestRock was selling to Customer B at that time, and that Player began receiving Group O purchase orders from Customer B in or about November 2021— months before Player's separation from WestRock. On information and belief, Player used WestRock's confidential information to help Group O grow this customer account and make sales to Customer B. For a subsequent period, Customer B reduced or eliminated its orders to WestRock for those items that Customer B had ordered from Group O instead.

66.    In early 2022, Player's direct supervisor, Osvaldo Arzaga ("Arzaga"), who is the Vice President of Sales for Victory Mexico, asked Jason Player about the decline WestRock was observing in Customer B's purchase orders. Player hid the truth and instead cited Customer B's supposed excess inventory that it was using up and Customer B's supposed decline in its own sales. On information and belief, these were dishonest answers: Player knew full well that WestRock's purchase orders from Customer B decreased because Player himself was shifting Customer B's orders from WestRock to Group O. WestRock, relying on Player's deceitful explanation, continued losing business and opportunity to Group O because of Player's and Group O's actions.

1253222.1

**Player represents both WestRock and Group O to customers.**

67.    As a further example of WestRock's customer's confusion created by Player's misconduct, in a March 15, 2022 email, an executive at Customer B referred to Player as representing "both" WestRock/Victory and Group O, stating:

> There are two packaging companies we use…
> Group O and Victory.
> I have copied our contact. He represents both…

While March 15, 2022 was well before Player's announced separation from WestRock, it is clear that Player was already "representing" Group O in the eyes of Customer B. *See* Ex. D.

**Player struggles to keep his competing roles straight.**

68.    In another example, a September 2021 email chain shows how Player and Jorge Macias, a sales executive at Group O Mexico and a Group O agent, were working to further Group O's interests by taking a customer order away from WestRock/Victory and directing it to Group O. Specifically, on September 20, 2021, a Customer B representative, forwarded a long email chain to Player seeking packaging advice. Player responded *from his private Gmail account*, copying Jorge Macias at Macias's Group O email account. When the customer responded, he included Player's WestRock victorypackaging.com email account, copying Macias and advising, "please see comments below regarding the packaging detail from our packaging vendor. … Seems Jason is available tomorrow …." After four more messages that day and the next, Player again responds via his Gmail account, deleting his WestRock address, and adding his personal cell phone. Despite Player's efforts, after his WestRock address is again looped in, Player tries a more direct approach: "Hello all – please switch this email chain to my gmail account jasondplayer@gmail.com. Thanks JP." *See* Ex. E.

**Player is treated as part of Group O "Team" months before departing WestRock/Victory.**

69.     Similarly, the following month, October 2021, the operations director for Customer C emailed both Jorge Macias at Group O and Jason Player at Victory Packaging, "Hi team," with an instruction about labeling of boxes. Here, Player is shown collaborating with Group O's Macias on group messages with WestRock's customers, acting not like a loyal WestRock employee but as a Group O team member. *See* Ex. F.

70.     In another example of Player's collaboration with Group O, Alexis Ruiz, at WestRock's supplier Cartwood, forwards an email regarding Group O inventory to *both* Jorge Macias at Group O *and* Jason Player at on November 16, 2021. This is still five months before Player's departure from Victory. *See* Ex. G.

**H.     Player and Group O Poach WestRock's Customers**

71.     Because of Player's double dealing and Group O's malicious conduct, WestRock's customers were entering into contracts with Group O and either lessening or ceasing their business relationships with WestRock. *See infra*, Section G.

72.     On information and belief, Group O has already facilitated and encouraged former WestRock employees to solicit business from WestRock customers.

**I.     Defendant Alexandra Yu Misappropriates WestRock Information and Starts Working for Group O in the Months Before Her Departure**

73.     WestRock has recently uncovered a number of disturbing facts about Yu's activities with Group O in the final weeks of her time at WestRock, including Yu's repeated access of a "Group O Sales Account," emailing herself engineering drawings and business information, and connecting at least one mass storage device to her computer shortly before leaving the company, all before her departure from WestRock.

**Yu repeatedly accesses a "Group O Sales" email account in the months before her departure from WestRock.**

74.    First, based on an initial forensic review of Yu's computer, it appears that Yu began accessing a google account groupoventas1@gmail.com (in English, "Group O Sales 1") from her WestRock computer's web browser and continued to do so on multiple occasions in the months of February and March of 2022, all while she was on WestRock's payroll.

75.    Specifically, the forensic review of Yu's computer revealed that on several dates, including February 9, 10, 21, and 23, as well as March 1 and 2, Yu accessed the "Group O Sales 1" email account at or around the same time that she accessed what appears to be her personal email account, perlayuhdez@gmail.com. What's more, Yu's web history indicates that Victory/WestRock network resources such as the WestRock Sharepoint, Victory Packaging Project Tracker site, and the WestRock SalesForce portal were being accessed in close proximity or at the same time as these Google accounts were accessed.

76.    Yu did not have WestRock permission, or any legitimate WestRock work-related reason, for repeatedly accessing a google-hosted account named after "Group O Sales"—an obvious WestRock competitor in the packaging solutions space.

**Yu emails confidential WestRock information from her WestRock account to her personal account in the weeks before her departure.**

77.    Around these months, WestRock has learned, Yu had been forwarding WestRock files, which included proprietary and confidential information about WestRock's customers and pricing, to her personal email account, for weeks prior to her resignation. Both before and after Yu gave notice of her resignation to WestRock, she sent numerous WestRock email messages (with their attachments) and other WestRock files to her presumed personal email account, perlayuhdez@gmail.com.

78.     Upon information and belief, Yu has retained this confidential customer information after her resignation and is continuing to use Victory's customer information for the benefit of Group O and to the detriment of Victory.

79.     For example, between February 23, 2022, and March 25, 2022 (her last day of employment at WestRock), Yu forwarded emails containing WestRock Confidential Information to her personal Gmail account. Each such email contained attachments with WestRock Confidential Information and in some cases CAD (computer assisted drawing) engineering files and logos for customer-specific products.

80.     The table below shows the date of emails that Yu sent to herself, the title of the email, the Victory customer to which the email and attachments related, and the type of documents in the attachments.

| Email From | To | Date | Title of Email | WestRock customer | Type of documents attached |
|---|---|---|---|---|---|
| **Ayu @victorypackaging.com** | Perlayuhdez @gmail.com | March 15, 2022 | PLANOS CAVALL | | WestRock engineered package drawings |
| **Ayu @victorypackaging.com** | Perlayuhdez @gmail.com | March 21, 2022 | Linerboard snapshot - $[redacted]/ton increase | Internal | Internal pricing information |
| **Ayu @victorypackaging.com** | Perlayuhdez @gmail.com | March 22, 2022 | Kits en la cad table | Internal | Design drawings (CAD files) |
| **Ayu @victorypackaging.com** | Perlayuhdez @gmail.com | March 23, 2022 | Cotizacion Power Mod Resi Meter Stacks – 4080500 carton graphics spec and artwork | Customer G | Customer engineering design drawings and specifications |
| **Ayu @victorypackaging.com** | Perlayuhdez @gmail.com | March 24, 2022 | Seguimiento proyecto empaque | Customer H | Excel spreadsheet with customer product information and quantities |
| **Ayu @victorypackaging.com** | Perlayuhdez @gmail.com | March 25, 2022 (2:55 pm) | Muestras [Customer I] | Customer I | Customer engineering design and drawing and specifications |

| Ayu @victorypackaging.com | Perlayuhdez @gmail.com | March 25, 2022 (also at 2:55 pm, 30 seconds later) | OIL Nuevo empaque 14 Valencia | Customer I | Customer engineering design and drawing and specifications |
| Ayu @victorypackaging.com | Perlayuhdez @gmail.com | March 25, 2022 (also at 2:55 pm, 5 seconds later) | Kits en la cad table | Customer J | Design drawings (CAD files) |

*See* Ex. H at pdf pages 1, 2, 4, 6, 8, 11, 12, 16.

81.     Yu did not have WestRock permission, or any legitimate WestRock work-related reason, for forwarding this information and attachments to her personal email in preparation of her departure from the company.

82.     Moreover, Yu was not authorized to retain, use, disclose, or otherwise misappropriate WestRock's confidential information and trade secrets. It appears from this transfer of information to her private email account that Yu was preparing to service Victory's customers from her new job at Group O, using the materials and information that Victory had expended its corporate time and resources to develop and improve.

83.     On information and belief, Yu also used external USB storage devices and online cloud storage devices (including Google Drive) to store WestRock trade secrets and confidential information for later use for the benefit of Group O.

**J.      Group O's Pattern and Practice of Inducing Disloyalty and Misappropriation Extends to Other Individuals.**

84.     On information and belief, Group O has solicited and coordinated other former WestRock employees' breaches of fiduciary duties and misappropriation of trade secrets and confidential information. In one example, former WestRock packaging engineer Dario Jimenez connected various USB drives to his WestRock computer after accepting Group O's job offer but before departing from WestRock. Jimenez copied large volumes of WestRock files to these storage devices before leaving the company. In another example, Group O Mexico president Mike

21

Holzwarth approached former WestRock manager Martha Renteria in October 2021 about working for Group O. In the months that followed, and in coordination with Group O personnel, Renteria purposefully mismanaged the storage of WestRock inventory, jeopardizing WestRock's product. In yet another example, another departing WestRock employee acknowledged that Holzwarth had approached her as well, and that Group O requested that she take WestRock customer information to Group O.

85.     On information and belief, several of the Group O participants described above have previously worked for Victory and WestRock, and they have had first-hand knowledge of the WestRock companies' policies and employee agreements concerning confidentiality, conflicts of interest, and ethics. Therefore, Group O's inducements of others' misappropriation of confidential information and breaches of loyalty were not just inexcusable—they were knowing, willful, and malicious.

**K.    WestRock Suffers Irreparable Harm from Defendants' Misconduct**

86.     As a direct result of Defendants' misconduct described above and herein, WestRock has suffered irreparable harm, including but not limited to:

    a.      Loss of future business opportunities;

    b.      Loss of customers and goodwill;

    c.      Loss of market share; and

    d.      Competitor use of its confidential information and trade secrets, including the attendant loss of the exclusivity, confidentiality, secrecy, and other valuable properties.

87.     Absent injunctive relief, and as a direct result of likely and inevitable future misconduct by Defendants, WestRock will suffer irreparable harm, including but not limited to:

    a.      Loss of future business opportunities;

    b.      Loss of customers and goodwill;

c.      Loss of market share; and

d.      Further damages and ongoing unfair competition resulting from a competitor's use of its confidential information and trade secrets, including the attendant loss of the exclusivity, confidentiality, secrecy, and other valuable properties.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831 *ET SEQ.* (AGAINST ALL DEFENDANTS)

88.      WestRock incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

89.      WestRock took reasonable steps, and invested significant time, resources, and money, in protecting and safeguarding its trade secrets.

90.      WestRock derives significant commercial and competitive value from its trade secrets and would be harmed by the use or disclosure of its trade secrets outside of its business. WestRock's trade secrets are highly confidential.

91.      WestRock's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

92.      WestRock's trade secrets are used in interstate and foreign commerce and relate to products and services that are in interstate and foreign commerce.

93.      While the Former Employee Defendants were employed by WestRock, WestRock provided them with access to WestRock's trade secrets in confidence, subject to confidentiality agreements/restrictions, and subject to other safeguards.

94.      Despite these efforts, Defendants have misappropriated WestRock's trade secrets. Defendants have misappropriated and/or will misappropriate WestRock's trade secrets by improperly retaining, disclosing and using them to compete with WestRock. Furthermore,

Defendants have failed to return to WestRock all documents, files, or devices that were improperly retained or acquired containing WestRock's trade secrets.

95.    Each Former Employee Defendant knew, and knows, that he or she may not misappropriate, disclose, or use WestRock's trade secrets for anyone's purposes other than those of WestRock.

96.    The Group O Defendants knew that their receipt of WestRock's trade secrets from Former Employee Defendants occurred without authorization.

97.    The conduct of each Defendant has been, and is, knowing, willful, malicious, wanton, and intended to damage the business of WestRock.

98.    As a result of the conduct of the Former Employee Defendants and Group O, WestRock has suffered, and continues to suffer, irreparable harm.

99.    As a result of the conduct of the Former Employee Defendants and Group O, WestRock has suffered, and continues to suffer, damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE TEXAS UNIFORM TRADE SECRETS ACT (TUTSA)
## (AGAINST ALL DEFENDANTS)

100.    WestRock incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

101.    WestRock took reasonable steps, and invested significant time, resources, and money, in protecting and safeguarding its trade secrets.

102.    WestRock derives significant commercial and competitive value from its trade secrets and would be harmed by the use or disclosure of its trade secrets outside of its business. WestRock's trade secrets are highly confidential.

1253222.1

103.    WestRock's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

104.    While each Former Employee Defendant was employed by WestRock, WestRock provided each Former Employee Defendant access to WestRock's trade secrets in confidence, subject to confidentiality agreements/restrictions, and subject to other safeguards.

105.    Defendants have misappropriated WestRock's trade secrets by retaining them after the end of the Former Employee Defendants' employment with WestRock, using them for their individual and Group O's purposes, and disclosing them to Group O and others.

106.    Each Former Employee Defendant knew, and knows, that he or she may not misappropriate, disclose, or use WestRock's trade secrets for his or anyone's purposes other than those of WestRock.

107.    The Group O Defendants knew that their receipt of WestRock's trade secrets from Former Employee Defendants occurred without authorization.

108.    Upon information and belief, other employees of Group O have used, disclosed, and otherwise misappropriated WestRock's trade secrets for purposes other than those of WestRock, all with the knowledge that their use, disclosure, and other misappropriation has not been authorized by WestRock.

109.    The conduct of each Defendant has been, and is, knowing, willful, malicious, wanton, and intended to damage the business of WestRock.

110.    The conduct of Group O has been willful, malicious, and intended to damage the business of WestRock.

1253222.1

111.    As a result of the conduct of each Former Employee Defendant and Group O, WestRock has suffered, and continues to suffer, irreparable harm.

112.    As a result of the conduct of each Former Employee Defendant and Group O, WestRock has suffered, and continues to suffer, damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY (AGAINST PLAYER AND YU)**

113.    WestRock incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

114.    By virtue of their employment with and position at the Plaintiff companies, the Former Employee Defendants owed Plaintiffs fiduciary duties, including a duty of loyalty.

115.    The duty of loyalty the Former Employee Defendants owed to WestRock includes the duty to act with utmost fidelity, integrity, and honesty, the duty not to act in concert with others in any manner contrary to the interests of WestRock, and the duty to disclose to WestRock any knowledge of matters that may harm the interests of WestRock.

116.    The Former Employee Defendants were made expressly aware of their duties of loyalty to the WestRock group of companies and acknowledged WestRock policies prohibiting employees from taking on any work that would conflict with WestRock's interests.

117.    While employed by WestRock, the Former Employee Defendants breached their fiduciary duties, including duties of loyalty, by, *inter alia*:

   a.    Upon information and belief, planning and acting to divert WestRock's potential and actual customers and other business away from WestRock and instead in favor of Group O;

   b.    Beginning months before their departure, acting as faithless servants acting against WestRock's interests;

1253222.1

c.    Planning to email, copy, retain, use, disclose, and otherwise misappropriate WestRock's confidential information, all without authorization;

d.    Emailing, copying, retaining, using, and disclosing Plaintiffs' confidential information for the benefit of Group O and at the expense of and to the detriment of WestRock; and

e.    Concealing from WestRock facts concerning their disloyal business activities in support of WestRock's competitor Group O.

118.    As a result of the conduct by the Former Employee Defendants, WestRock has suffered, and continues to suffer, irreparable harm.

119.    As a result of the conduct by the Former Employee Defendants, WestRock has suffered, and continues to suffer, damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**BREACH OF CONTRACT (AGAINST PLAYER AND YU)**

120.    WestRock incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

121.    The Confidentiality Agreements are valid and enforceable agreements between WestRock and each Former Employee Defendant, and their relevant obligations thereunder survived the termination of their employment with WestRock.

122.    WestRock duly and fully performed all of its obligations under the Confidentiality Agreements.

123.    The Former Employee Defendants breached their Confidentiality Agreements by, *inter alia*:

a.    Failing to protect and hold in trust and strictest confidence all WestRock confidential information and trade secrets;

b.  Using WestRock confidential information and trade secrets other than for WestRock's benefit, including using, disclosing, and giving to others WestRock confidential information and trade secrets for purposes other than WestRock's legitimate business purposes;

c.  Failing to deliver to WestRock all WestRock confidential information and trade secrets upon the termination of their employment with WestRock;

d.  E-mailing, keeping, copying, storing, retaining and/or taking WestRock's confidential information and trade secrets, including after the termination of their employment with WestRock;

e.  Failing to devote best, full-time efforts to faithfully serve WestRock during the term of the Former Employee Defendants' employment; and

f.  For Group O's benefit, soliciting customers, vendors, and employees with whom the Former Employee Defendants had material business-related contact prior to the termination of their employment with WestRock.

124.  Additionally, the Player Employment Agreement is a valid and enforceable agreement between WestRock and Player, and his relevant obligations thereunder survived the termination of their employment with WestRock. WestRock duly and fully performed all of its obligations under the Player Employment Agreement, but Player breached its terms by, *inter alia*, soliciting customers and vendors on behalf of Group O in competition with WestRock, using and disclosing WestRock's confidential information, and failing to abide by the policies and manuals of WestRock. *See generally*, Exhibit B (Player Employment Agreement), incorporated into this Complaint.

125.    As a result of the Former Employee Defendants' conduct, WestRock has suffered, and continues to suffer, irreparable harm.

126.    As a result of the Former Employee Defendants' conduct, WestRock has suffered, and continues to suffer, damages in an amount to be determined at trial, including, but not limited to, actual damages, direct damages, indirect damages, incidental damages, consequential damages, and costs and expenses incurred in forensic services, retrieving WestRock confidential information and trade secrets, and remediation of Defendants' devices and accounts.

127.    WestRock further seeks recovery of its reasonable attorneys' fees and expenses as available under Chapter 38 of the Texas Civil Practices and Remedies Code, the terms of the Player Employment Agreement, and any other applicable agreements.

### FIFTH CAUSE OF ACTION
### KNOWING PARTICIPATION IN BREACH OF FIDUCIARY DUTY
### (AGAINST GROUP O)

128.    Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

129.    The Former Employee Defendants had fiduciary duties to Plaintiffs.

130.    Group O knew that the Former Employee Defendants worked for WestRock and that they owed WestRock a duty of loyalty while they were still employed by WestRock. In addition, key leaders of Group O participating in this scheme had actual knowledge of the specific duties that the Former Employee Defendants had to Plaintiffs by virtue of their positions at and their employment and confidentiality agreements with Plaintiffs.

131.    Nonetheless, upon information and belief, Group O knowingly participated in the Former Employee Defendants' breach of their fiduciary duty, knew the Former Employee Defendants were committing numerous tortious acts while they were still employed by WestRock, and knowingly participated in the Former Employee Defendants' misappropriation of WestRock's

confidential information and trade secrets. In fact, Group O's personnel encouraged the Former Employee Defendants, during their WestRock employ, to divert customers and business away from WestRock and to Group O, and also encouraged the Former Employee Defendants to misappropriate and misuse WestRock's confidential information and trade secrets for Group O's benefit.

132.    WestRock has suffered injury as a proximate result of Group O's assistance in the above-referenced unlawful actions. These injuries include injuries to customer relationships, employee relationships, and industry reputation, all in addition to monetary losses.

133.    Accordingly, WestRock is entitled to injunctive relief restraining such conduct, as well as other legal and equitable relief, including but not limited to disgorgement of salaries and bonuses paid to Former Employee Defendants, and exemplary damages.

**SIXTH CAUSE OF ACTION**
**FRAUD BY NONDISCLOSURE (AGAINST PLAYER)**

134.    WestRock incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

135.    The Former Employee Defendants concealed facts about their disloyal Group O business activities from their employer, WestRock.

136.    As members of WestRock's sales team, they had a duty to disclose known misappropriation of confidential information, conflicts of interest, and in-house business activities that ran counter to WestRock's interest. The Former Employee Defendants remained deliberately silent to their employer on these issues.

137.    Player and Yu knew that WestRock was ignorant of the foregoing wrongful behavior and that WestRock did not have an equal opportunity to discover the full facts.

138.    Moreover, the Former Employee Defendants intended to induce WestRock to refrain from corrective actions, *inter alia*, (a) disciplining or terminating employees who participated in the scheme, and (b) contacting customers to try to win back stolen business. WestRock relied on the Former Employee Defendants' nondisclosure, thus foregoing or delaying corrective actions and, as a result, losing trade secrets, confidential information, customer relationships, and salary expenses to faithless employees.

139.    In one such example discussed above, in or around the first two weeks of February 2022, Player's supervisor, Osvaldo Arzaga, spoke with Player by telephone precisely to discuss the explanation for a Customer B's decline in purchase orders. Player deliberately omitted the most salient fact that Group O, with Player's own assistance, was leeching that business away from WestRock. Player would have known that Arzaga was ignorant of this and did not have an equal opportunity to know of Player's surreptitious disloyal behavior and Group O's business operations. Player intended that WestRock refrain from taking corrective actions, whether against Player, against Group O, and/or in efforts to win back the customer's lost business. WestRock believed Player's deceitful and incomplete explanations, and as a result, WestRock continued losing sales to Group O and continued suffering disloyalty and misappropriation within its ranks.

140.    WestRock has suffered injury as a proximate result of the Former Employee Defendants' above-referenced wrongful actions. These injuries include loss of trade secrets and confidential information, injuries to customer relationships, employee relationships, and industry reputation, all in addition to monetary losses.

**SEVENTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONS (AGAINST ALL DEFENDANTS)**

141.    WestRock incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

142.    Defendants are, and have been, aware that WestRock enjoys advantageous business, economic, and contractual relations with its customers.

143.    Defendants are, and have been, aware that WestRock has a reasonable likelihood of continuing, future, and prospective advantageous business, economic, and contractual relationship with its customers.

144.    Defendants are, and have been, aware, that the Former Employee Defendants have valid and enforceable contractual and legal obligations prohibiting each of them from using, disclosing, or otherwise misappropriating WestRock's confidential information and trade secrets for purposes other than to benefit WestRock, including interference with WestRock's relations with its customers.

145.    Defendants intentionally interfered with WestRock's existing, continuing, future, and prospective business, economic, and contractual relations with its employees and customers by, *inter alia*:

a.    Soliciting WestRock's customers to terminate, not enter into, and/or diminish their existing, continuing, future, and prospective business, economic, and contractual relations with WestRock;

b.    Inducing WestRock employees to breach their contractual confidentiality obligations to WestRock; and

c.    Using WestRock's confidential information and trade secrets to solicit WestRock's customers.

146.    Defendants are, and have been, aware that the foregoing conduct, as well all other previously described breaches by the Former Employee Defendants, violate each Former Employee Defendants' contractual obligations to WestRock.

147.    Defendants have acted without privilege or justification.

148.    The conduct of Defendants has been, and is, knowing, willful, malicious, wanton, and intended to damage the business of WestRock.

149.    As a result of the conduct of Defendants, WestRock has suffered, and continues to suffer, irreparable harm.

150.    As a result of the conduct of Defendants, WestRock has suffered, and continues to suffer, damages in an amount to be determined at trial.

## CIVIL CONSPIRACY LIABILITY

151.    WestRock incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

152.    The Former Employee Defendants and Group O were members of a combination of two or more persons.

153.    The object of such combination was to accomplish an unlawful purpose: to profit from the Former Employee Defendants' disloyalty to WestRock, to misappropriate the Former Employee Defendants' confidential information and trade secrets, and to tortiously interfere with WestRock's agreements with its employees, customers, and vendors, among other unlawful purposes described above.

154.    Defendants had a meeting of minds to engage in the course of action described above in order to further the business of Group O.

155.    As described above, Defendants committed the overt acts of misappropriation of trade secrets, tortious interference, and breach of fiduciary duty.

156.    WestRock has suffered actual damages as a proximate result of Defendants' conduct.

## ALTER-EGO

157.    WestRock incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

158.    Upon information and belief, Group O Mexico and Dylan Group have been organized and operated as mere tools and/or business conduits of Group O, Inc. and of each other, and the unity between all such parties is such that the separateness of single entities and individuals has ceased. Upon information and belief, Group O Inc. works closely with, and uses Group-O Analitica and Dylan Group LLC as instrumentalities, to wash its hands of the aforementioned acts of misappropriation, unfair competition, tortious interference and other related conduct against WestRock in Texas, Mexico, and other states.

## CONDITIONS PRECEDENT

159.    All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## JURY DEMAND

160.    Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, WestRock prays for and respectfully requests judgment in WestRock's favor and against Defendants as follows:

A.    Granting temporary, preliminary, and permanent injunctions enjoining and restraining each Former Employee Defendant from:

   i.    Disclosing, using, or otherwise misappropriating WestRock's confidential information and trade secrets;

   ii.    Violating any obligation under the Confidentiality Agreements with WestRock;

iii.    As to Player, through April 4, 2024, (a) soliciting, whether directly or indirectly, any customers or vendors of WestRock with whom Player had material business-related contact at WestRock to support or aid any business engaged in providing products or services which are the same as or similar to those offered by WestRock or (b) soliciting or inducing, whether directly or indirectly, any employee or independent contractor of WestRock with whom Player had material business-related contact at WestRock to terminate or lessen such employment or contract with WestRock.

B.    Granting temporary, preliminary, and permanent injunctions requiring each Former Employee Defendant to conduct a thorough, good faith search for WestRock's property, including files and documents, that may be in such Defendant's possession, custody, or control, including any confidential information or trade secrets, and to return all such material to WestRock;

C.    Granting temporary and preliminary injunctions requiring each Former Employee Defendant to facilitate WestRock's search and forensic examination of any and all repositories of electronically stored information in each Former Employee Defendant's possession, custody, or control that may contain any WestRock confidential information or trade secrets;

D.    Granting an injunction enjoining and restraining Group O from:

i.    Disclosing, using, or otherwise misappropriating WestRock's confidential information and trade secrets;

ii.    Directly or indirectly communicating with, marketing to, purchasing from, selling to, networking with, or otherwise engaging in any business activities

1253222.1

with any individual or entity who is the subject of any confidential information or trade secret information that any Former Employee Defendant obtained from WestRock;

    iii.    Engaging in any efforts to encourage or participate in the breach of fiduciary duties owed by WestRock personnel to WestRock;

E.    Granting an injunction requiring Group O to facilitate WestRock's search and forensic examination of any and all repositories of electronically stored information in Group O's possession, custody, or control that may contain any WestRock confidential information or trade secrets;

F.    Granting an injunction requiring Group O to conduct a thorough, good faith search for WestRock's property, including files and documents, that may be in Group O's possession, custody, or control, including any confidential information or trade secrets, and to return all such material to WestRock;

G.    Ordering disgorgement and requiring each Former Employee Defendant to repay to WestRock the value of his or her salary, benefits, and other compensation during his or her period of faithless service and/or disloyalty to WestRock;

H.    Ordering disgorgement and requiring Defendants to pay to WestRock the value of all benefits obtained as a result of their tortious conduct;

I.    Awarding WestRock compensatory, special, consequential, exemplary, and punitive damages in an amount to be determined but no less than the amount of WestRock's actual loss and the amount of Defendants' unjust enrichment;

J.    Awarding WestRock its attorneys' fees, costs, and other expenses incurred in bringing this Action and in otherwise enforcing its rights, investigation and addressing

1253222.1

misconduct by Defendants, and obtaining the return of and/or remediation concerning any WestRock trade secrets and confidential information retained by Defendants;

      K.    Awarding WestRock interest; and

      L.    Ordering such other and further relief as the Court deems just and proper.

1253222.1

Date: September 30, 2022                          Respectfully submitted,

                                                  SMYSER KAPLAN & VESELKA, L.L.P.

                                                      */s/ Lee L. Kaplan*
                                                  Lee L. Kaplan
                                                  Texas Bar No. 11094400
                                                  Federal I.D. 1840
                                                  Hector R. Chavez
                                                  Texas Bar No. 24078335
                                                  Federal I.D. 1364992
                                                  Alex Hernandez
                                                  State Bar No. 24106086
                                                  717 Texas Avenue, Suite 2800
                                                  Houston, Texas 77002-2761
                                                  Telephone:  (713) 221-2300
                                                  Facsimile:   (713) 221-2320
                                                  lkaplan@skv.com
                                                  hchavez@skv.com
                                                  ahernandez@skv.com

                                                  ATTORNEYS FOR PLAINTIFFS WESTROCK
                                                  COMPANY, VICTORY PACKAGING, LP, and
                                                  COMERCIALIZADORA VICTORY S. DE R.L.
                                                  DE C.V.

SILLS CUMMIS & GROSS P.C.
Patricia M. Prezioso *(pro hac vice pending)*
New Jersey State Bar No. 029552002
One Riverfront Plaza
Newark, NY  07102
Telephone:  (973) 643-5041
Facsimile:   (973) 643-6500
pprezioso@sillscummis.com

1253222.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2022, copies of this document are being served on Defendants via email as follows:

| | |
|---|---|
| **Jason Player** | **Group O, Inc.** |
| Diana Perez Gomez | **Group-O Analítica** |
| Leslie T. Tan | **North America, S. de R.L. de C.V.** |
| Chamberlain Hrdlicka | Daniel Pulecio-Boek |
| diana.gomez@chamberlainlaw.com | Roland Garcia |
| leslie.tan@chamberlainlaw.com | Angeles Cassin |
| | Greenberg Traurig, LLP |
| **Perla Alexandra Yu Hernandez** | pulecioboekd@gtlaw.com |
| perlayuhdez@gmail.com | GarciaR@gtlaw.com |
| | Angeles.Cassin@gtlaw.com |

_/s/ Hector R. Chavez_
Hector R. Chavez

1253222.1