United States District Court
Southern District of Texas

**ENTERED**

September 28, 2023

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **WestRock Company, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-CV-2646** |
| | § | |
| **Jason Douglas Player,** | § | |
| **et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

This is a misappropriation of trade secrets action brought under the Defend Trade Secrets

Act, 18 U.S.C. § 1831, the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code Ann.

§ 134A.001 *et seq.*, and various common law claims. WestRock Company, Victory Packaging,

LP, and Comercializadora Victory S. de R.L. de C.V. (collectively, "Plaintiffs") seek injunctive

relief, disgorgement, and damages for unjust enrichment against Defendants Jason Douglas Player,

Perla Alexandra Yu Hernandez, Group-O Analitica North America, S. de R.L. de C.V., Group O,

Inc., and Dylan Group LLC. Pending before the Court are Player's Motions for a More Definite

Statement under Rule 12(e) and Motion to Dismiss under Rules 12(b)(1) and 12(b)(3) (Dkt. Nos.

24,[1] 44), Group O's Motion to Dismiss under *Forum Non Conveniens* and under Rules 12(b)(2)

and 12(b)(6) (Dkt. No. 46), and Dylan Group's Motion for a More Definite Statement under Rule

12(e) and Motion to Dismiss under *Forum Non Conveniens* and under Rules 12(b)(2) and 12(b)(3)

(Dkt. No. 49).[2] Based on a review of the motions, arguments, record, and relevant law, the Court

---

[1] The Court **RECOMMENDS** denying the Motion (Dkt. No. 24) as **MOOT**.

[2] On May 2, 2022, this case was referred to the Undersigned for all purposes pursuant to
28 U.S.C. 636(b)(1)(A) and (B). (Dkt. No. 79.)

**RECOMMENDS** Defendant Player's Motion for a More Definite Statement under Rule 12(e) and Motion to Dismiss under Rules 12(b)(1) and 12(b)(3) (Dkt. No. 44) be **DENIED**; Group O Defendants' Motion to Dismiss under *Forum Non Conveniens* and under Rules 12(b)(2) and 12(b)(6) (Dkt. No. 46) be **DENIED**; and Defendant Dylan Group's Motion for a More Definite Statement under Rule 12(e) and Motion to Dismiss under *Forum Non Conveniens* and under Rules 12(b)(2) and 12(b)(3) (Dkt. No. 49) be **DENIED**.

## I.     BACKGROUND

Plaintiffs WestRock Company ("WestRock"), Victory Packaging, LP ("Victory Packaging" or "Victory"), and Comercializadora Victory S. de R.L. de C.V. ("Victory Mexico"), (collectively, "Plaintiffs"), filed a Complaint against former employees Jason Player ("Player") and Perla Alexandra Yu Hernandez ("Yu"), Group O, Inc. ("Group O"), and Group-O Analitica North America, S. de R.L. de C.V. ("Group O Mexico", collectively, "Group O Defendants") on August 8, 2022. (Dkt. No. 1.) Plaintiffs filed a First Amended Complaint ("FAC"), adding Dylan Group on September 30, 2022. (Dkt. No. 32.) Player filed a motion to dismiss on October 21, 2022. (Dkt. No. 44.) Group O Defendants filed a motion to dismiss on October 28, 2022. (Dkt. No. 46.) Dylan Group filed a motion to dismiss on November 4, 2022. (Dkt. No. 49.) On November 14, 2022, Plaintiffs filed opposition to Player's motion. (Dkt. No. 53.) On December 2, 2022, Plaintiffs filed opposition to Group O's and Dylan's motions. (Dkt. Nos. 60, 61.) On January 27, 2023, Plaintiffs filed a motion for jurisdictional discovery. (Dkt. No. 69.) Defendants opposed the motion. (Dkt. Nos. 73, 74.) On March 21, 2023, Judge Andrew Hanen granted Plaintiffs' motion and allowed for supplemental briefing. (Dkt. No. 77.)

The Court delivered its recommendation on July 17, 2023, before the parties filed their supplemental briefing. (Dkt. No. 80.) Defendants filed objections with the Court, largely

underscoring that jurisdictional discovery was not complete, and the recommendation was premature. (Dkt. Nos. 82, 83.) The Court held a hearing on Defendants' objections. (Dkt. No. 85.) Plaintiffs informed the Court that it did not intend to use the information disclosed up to that point in discovery for its jurisdictional argument. (*Id.*) Defendants argued that the information Plaintiffs obtained proved the Court lacked jurisdiction. (*Id.*) The Court considered the parties' arguments, set deadlines for supplemental briefing, and withdrew its recommendation. (Dkt. No. 86.) Supplemental briefing has been filed with the Court by all parties. (Dkt. Nos. 93, 95, 97, 99.)

WestRock is a Delaware corporation with its principal place of business in Atlanta, Georgia. (Dkt. No. 32 at ¶ 6.) It is the parent company of Victory Packaging and Victory Mexico, who are both wholly owned subsidiaries. (*Id.* at ¶¶ 6, 7, 8.) Victory Packaging is a Texas limited liability partnership with its principal place of business in Houston, Texas. (*Id.* at ¶ 6.) Victory Mexico is a corporation organized under Mexican law with its principal place of business in Monterrey, Mexico. (*Id.* at ¶ 7.) The companies provide sustainable fiber-based paper and packaging solutions to manufacturers and others. (*Id.* at ¶ 24.)

Defendant Group O is an Illinois corporation with its principal place of business in Milan, Illinois. (*Id.* at ¶ 11.) Group O Mexico is a corporation organized under Mexican law with its listed principal place of business in Juarez, Chihuahua, Mexico. (*Id.* at ¶ 12.) Dylan Group is a limited liability company incorporated in Michigan. (*Id.* at ¶ 13.) All companies are engaged in an aspect of packaging solutions.

According to Plaintiffs, Defendant Group O—acting through its Mexican subsidiary, Group O Mexico, and its separate employment arm, Dylan Group—engaged in a scheme to poach WestRock's business by hiring several key employees from Victory Packaging's sales force located in Texas and Mexico; and through those employees misappropriated WestRock's trade

secrets, proprietary contracting data, and confidential information. (*Id.* at ¶¶ 157–58.)

Player, who is located in Texas, was a sales account executive with Victory Packaging from March 31, 2014, through April 5, 2022.  (*Id.* at ¶¶ 49, 54.) Player signed an employment agreement with Victory Packaging and WestRock, each containing confidentiality obligations. (Dkt. No. 32 at Exs. A–B.) Player acted as an agent for Victory Packaging and was responsible for managing existing customer accounts and establishing new accounts by prospecting and engaging new customers. (*Id.*) Player allegedly coordinated the scheme to misappropriate WestRock's confidential information and trade secrets by transferring customer information and relationships to Group O. (*Id.* at ¶¶ 56–57.)  As confirmed by a forensic review of Player's computer, the scheme lasted for over eleven months. (*Id.*) Plaintiffs allege Player worked with Texas and Mexico based Dylan Group employees, acting on behalf of Group O and Group O Mexico, by using both his Victory Packaging email and his personal email. (*Id.* at ¶ 57.) Player carbon copied ("cc'd") his personal email in his Victory Packaging customer correspondence when dealing with Group O leadership and sales executives, and further, asked customers to use his personal email as opposed to his Victory Packaging email address. (*Id.* at ¶ 58.)

Plaintiffs allege the scheme between Player and the Group O agents, including Sean Kelly, Jorge Macias, and Mike Holzwarth, was coordinated around May 2021. (*Id.* at ¶¶ 57, 68, 84.) Plaintiffs allege the scheme was perpetuated by email and through Player's personal cell phone as evidenced by the email chains recovered from the forensic review of his computer. (Dkt. No. 32 at Exs. C–G.) Player allegedly conspired with Sean Kelly, Group O's Houston based sales executive, on customer proposals for an existing WestRock customer. (*Id.* at Ex. C.) Plaintiffs also allege Player diverted sales from a long time Victory Packaging customer to Group O. (*Id.* at ¶¶ 64–66.) According to Plaintiffs, when Player was asked by his supervisor about the decline, he

fabricated a cover story to hide that he was responsible for diverting business. (*Id*. at ¶ 66.) A later email from the customer confirmed that Player was representing both Victory Packaging and Group O. (*Id*. at ¶ 67.) Player also allegedly conspired with Jorge Macias, a Group O Mexico sales executive, to steer business to Group O. (*Id*. at ¶¶ 68–69.) There, Player used his personal email and cell phone number, but was repeatedly looped in with his Victory Packaging email by the customer. (*Id*.) Again, Player asked the customers to use his personal email, as opposed to his Victory Packaging email. (*Id*.) Plaintiffs note that Player also seemingly used WestRock's suppliers to assist Group O with its inventory. (*Id.* at ¶ 70.)

Plaintiffs allege that Player is not the only former employee who Group O hired and encouraged to poach business from them. Others included Yu, Dario Jimenez, and Martha Renteria. (*Id.* at ¶¶ 72–73, 84.) Plaintiffs allege Group O Mexico President Mike Holzwarth approached the employees and extended employment offers. (*Id*. at ¶ 84.) These hirings allegedly allowed Group O to steer customers away from WestRock and to Group O. (*Id.* at ¶ 71.) This resulted in customers ceasing or lessening their business relationships with WestRock, Victory Packaging, and Victory Mexico. (*Id.*) Plaintiffs indicate that the WestRock employees who had been sought out by Group O made an ongoing effort to steal confidential and trade secret information to obtain a competitive advantage prior to their resignation. (*Id.* at ¶¶ 72–74.) This included transferring business information, client engineering drawings, customer lists, contract pricing, project tracking information, and other information accessed through Plaintiffs' confidential network resources. (*Id.* at ¶¶ 74–83.) The former employees used external USB drives, cloud storage devices, and email to transfer the information to Group O. (*Id.* at ¶ 83.) When the employees joined Group O, they were in nearly identical roles to those they served in at Victory Packaging. (Dkt. No. 60 at Exs. 1–10.)

Plaintiffs now seek to recover damages from all Defendants for alleged violations of the Defendant Trade Secrets Act (DTSA), the Texas Uniform Trade Secrets Act (TUTSA), and Tortious Interference with Existing and Prospective Business Relationships. (Dkt. No. 32 at 23–25, 31–33.) Plaintiffs sue Player and Yu for Breach of Fiduciary Duty and Breach of Contract, and Player for Fraud by Nondisclosure. (*Id.* at 26–30.) Plaintiffs sue Group O Defendants and Dylan Group for Knowing Participation in the former employees' Breaches of their Fiduciary Duties (*Id.* at 29–30.)

## II.   LEGAL STANDARDS

### A.  STANDING

Standing is a threshold requirement when determining whether subject matter jurisdiction exists. *Juidice v. Vail*, 430 U.S. 327, 331 (1977). To have Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *El Paso Cnty., Texas v. Trump*, 982 F.3d 332, 337 (5th Cir. 2020). "[I]t is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). Instead, a plaintiff must allege facts that are "essential to show jurisdiction." *Id.*

### B.  12(b)(1) LACK OF SUBJECT MATTER JURISDICTION

Federal courts are of limited jurisdiction and a court "must presume that a suit lies outside [its] limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Id.* Federal courts have original

jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. "Federal question jurisdiction exists when 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983)). Diversity jurisdiction exists when no plaintiff is a citizen of the same state as any defendant and the amount in controversy exceeds $75,000. *Winters v. Texas SFI P'ship 68 Ltd.*, No. 4:20-CV-03404, 2022 WL 1508445 (S.D. Tex. May 12, 2022); *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). A corporation's citizenship is its state of incorporation and its principal place of business. 28 U.S.C. § 1332(c); *see Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). A court may consider the complaint alone, the complaint supplemented by the undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of those disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

### C.  12(b)(2) LACK OF PERSONAL JURISDICTION

"When a district court rules on a Rule 12(b)(2) motion without a hearing, the plaintiff must make a prima facie showing of jurisdiction." *Vortex Companies, LLC v. Amex Sanivar Holding AG*, No. 4:22-CV-01614, 2022 WL 17686569, at *2 (S.D. Tex. Nov. 29, 2022); *see also Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). "The court may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise personal jurisdiction." *Bureau Veritas Commodities & Trade, Inc. v. Cotecna Inspection SA*, No. 4:21-CV-00622, 2022 WL 912781, at *2 (S.D. Tex. Mar. 29, 2022). A two-step analysis governs the inquiry into personal jurisdiction over nonresident defendants. *Ham*, 4 F.3d at 415. First, the court determines whether the forum state's long arm statute permits exercise of jurisdiction. *Id.* Second, the court determines whether the exercise of personal jurisdiction comports with due process. *Id.*

"Personal jurisdiction in federal court is governed by the law of the state in which the federal court sits." *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occup. Safety & Health California*, 1 F.4th 346, 351 (5th Cir. 2021). The Supreme Court of Texas has interpreted the state's long arm provisions as conferring personal jurisdiction over nonresidents whenever consistent with constitutional due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). Texas's long-arm statute specifically provides for personal jurisdiction over nonresidents who "do[] business" in Texas or "commit[] a tort" in Texas. *Bulkley & Assocs., L.L.C.*, 1 F.4th at 351. Constitutional due process requires that "(1) the defendant have established 'minimum contacts' with the forum state; and (2) the exercise of personal jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Ham*, 4 F.3d at 415.

"Minimum contacts" can give rise to either specific or general personal jurisdiction. *Vortex Companies, LLC*, 2022 WL 17686569, at *2. A court assesses specific jurisdiction by first determining if the defendant "purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008); *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). The court then looks at whether "the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); *Linder v. Assured Enterprises, Inc.*, No. CV H-20-1363, 2020 WL 692264, *2 (S.D. Tex. Nov. 5, 2020), *report and recommendation adopted*, No. CV H-20-13 63, 2020 WL 6888571 (Nov. 24, 2020) ("A nonresident defendant's contacts with the forum state give rise to specific jurisdiction if they arise from or directly relate to the cause of action."). General personal jurisdiction can be found if the contacts are continuous, systematic, and substantial, even if they are unrelated to the cause of action. *Marathon Oil*, 182 F.3d at 295. "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008).

Finally, courts review if the exercise of personal jurisdiction is fair and reasonable. *Vortex Companies, LLC*, 2022 WL 17686569, at *2. A court should evaluate "the burden on the defendant, the forum [s]tate's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several [s]tates in furthering fundamental substantive social policies." *Burger King Corp.*, 471 U.S. at 476–77 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 564 (1980)) (internal quotations omitted).

### D.  12(b)(3) IMPROPER VENUE

Plaintiffs bear the burden of proving venue is proper. *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011). Venue may be established by residential venue, transactional venue, the fallback venue provision, or through pendent venue. *See* 28 U.S.C.A. §§ 1367(a), 1391 (b)(1)-(3). The fallback provision is applicable only if there is no district in the United States that satisfies one of the first two provisions. 14D Fed. Prac. & Proc. Juris. § 3806.1 (4th ed.) (citing § 1391(b)(3)). When claims are brought under supplemental jurisdiction a court may exercise pendant venue if the claims share a common nucleus of operative fact with those claims that have subject matter jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *see* 28 U.S.C.A. § 1367(a).

"[T]he court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff" when deciding a Rule 12(b)(3) motion. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). The court may consider extrinsic evidence when deciding the motion. *Brewer v. United States*, No. CV H-17-870, 2017 WL 6398637, at *1 (S.D. Tex. June 19, 2017). "[T]he Court may decide to proceed with determining venue before resolving [a] jurisdictional issue." *Tesoro Ref. & Mktg. Co. LLC v. C.A.R. Enters., Inc.*, No. SA-18-CV-820-XR, 2018 WL 6050603, at *8 (W.D. Tex. Nov. 19, 2018). "If venue is lacking, district courts are instructed to 'dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" *Renowned Chem. Sols. LLC v. CJ Chemicals LLC*, No. 4:21-CV-669, 2022 WL 3566937, at *4 (S.D. Tex. Aug. 17, 2022) (quoting 28 U.S.C.A. § 1406). "[W]hile the absence of subject matter jurisdiction prevents a court from reaching a case's merits, a court may transfer a case without first determining whether it has subject matter jurisdiction over the case." *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 983 (S.D. Tex. 2011).

"The decision to dismiss or transfer lies within the court's discretion." *Graham v. Dyncorp Int'l, Inc.*, 973 F. Supp. 2d 698, 700 (S.D. Tex. 2013) (citation omitted).

"It is well-settled [law] that venue is proper in any district agreed to under a forum selection clause." *J.D. Fields*, 391 F. Supp. 3d at 705 (citing *WorldVentures Holdings, LLC v. MaVie*, No. 4:18-CV-393, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018)) (alteration in original). "Such clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Braspetro Oil Servs. Co.*, 240 F. App'x at 615 (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)).

### E. 12(b)(6) FAILURE TO STATE A CLAIM

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint need not contain detailed factual allegations, it "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that . . . raise a right to relief above the speculative level." *Wilson v. Hous. Cmty. Coll. Sys.*, 955 F.3d 490, 500 (5th Cir. 2020) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Winn v. Cleburne Indep. Sch. Dist.*, No. 3:18-CV-02949-E, 2020 WL 5291941, at *3 (N.D. Tex. Sept. 3, 2020) (quoting *Iqbal*,

556 U.S. at 678). This "plausibility standard is not akin to a probability requirement but asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

In reviewing a 12(b)(6) motion, a court must accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (quotations omitted). Yet, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). Dismissal is proper only if the plaintiff's complaint: (1) does not include a cognizable legal theory, or (2) includes a cognizable legal theory but fails to plead enough facts to state a claim to relief that is plausible on its face. *Ramming*, 281 F.3d at 161; *Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 2d 734, 737–38 (S.D. Tex. 1998).

## F.   12(e) MORE DEFINITE STATEMENT

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). Rule 12(e) must be read in light of Rule 8 of the Federal Rules of Civil Procedure. *Tempur-Pedic Intern. Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 971 (S.D.

Tex. 2012). Rule 8 requires a short and plain statement of the claim that gives notice of what the plaintiff's claim is and the grounds upon which it rests. FED. R. CIV. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] motion for more definite statement is generally disfavored and is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail." *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 707 (S.D. Tex. 2011) (citing *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001)). "Where matters can be clarified and developed during discovery rather than the existence of a complaint that impedes the defendant's ability to form a responsive pleading, such a motion should not be granted." *Mendez v. Semi Express, LLC*, No. 4:21-CV-02978, 2022 WL 1138148, at *2 (S.D. Tex. Apr. 18, 2022) (quoting *Ross v. Texas*, No. H-10-2008, 2011 WL 5978029, at *7 (S.D. Tex. Nov. 29, 2011)).

### G. *FORUM NON CONVENIENS*

The doctrine of *forum non conveniens* "provides for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). "District courts have discretion to address a motion to dismiss based upon *forum non conveniens* before determining any other issues, including the issues of subject matter or personal jurisdiction." *Mendo v. ICA Fluor Daniel*, No. 1:16-CV-62, 2016 WL 10824620, at *1 (S.D. Tex. Aug. 4, 2016) (citing *Sinochem Int'l Co., Ltd.*, 549 U.S. at 425). "The proper way to enforce a forum selection clause is 'through the doctrine of *forum non conveniens*.'" *A-76 Techs., Inc. v. Mass Mgmt., LLC*, No. 4:21-CV-923, 2021 WL 6202654, at *3 (S.D. Tex. Sept. 7, 2021) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013)). A "defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co., Ltd.*, 549 U.S.

at 430. When determining a dismissal for *forum non conveniens* a court must consider: 1) the availability of an alternate forum; 2) if the forum would provide an adequate remedy to the prevailing party; 3) certain private interest factors; and 4) certain public interest factors. *Mendo*, 2016 WL 10824620, at *2 (citations omitted).

### III.   DISCUSSION

Each Defendant has separately filed various Rule 12 motions. Defendant Player is the only Defendant asserting that the Court lacks subject matter jurisdiction. The Court will begin with Defendant Player's attack on jurisdiction before it moves to his other non-merits based motions. *See Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 262 (5th Cir. 2020) ("When a motion to dismiss for lack of jurisdiction is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."). Otherwise, "[w]hen multiple challenges are present before the Court, there is no mandatory sequence for resolving non-merits based issues." *Hill v. Keliher*, No. 4:19-CV-02528, 2019 WL 3837113, at *3 (S.D. Tex. Aug. 14, 2019). The Court finds no merit in Player's motion. Accordingly, the Court recommends the Motion be denied for the reasons set forth below.

### a.   Defendant Player

#### i.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant Player argues that WestRock and Victory Mexico lack standing to sue because Plaintiffs have judicially admitted that Player was not either entity's employee. (Dkt. No. 44 at 13.) Player alleges without an employment relationship, there can be no breach of a fiduciary relationship, a breach of contract claim, or injuries suffered fairly traceable to Player's conduct. (*Id.*) Player further argues that Plaintiffs' failure to identify who owned the allegedly misappropriated trade secrets or identify who provided the trade secret to him also makes the

TUTSA and DTSA claims fail for lack of standing. (*Id.*) Finally, because Plaintiffs have not alleged the entity who had the purported prospective business relationship, Player argues that he cannot have interfered with a business relationship an entity did not have. (*Id.*)

"[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 542 (5th Cir. 2022) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). "The doctrine of standing . . . requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Novak v. United States*, No. CIV. 12-00638 LEK, 2013 WL 1817802, at *4 (D. Haw. Apr. 26, 2013), *aff'd*, 795 F.3d 1012 (9th Cir. 2015) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)) (internal quotation marks and citation omitted). "To have standing to sue, the plaintiff must demonstrate injury in fact that is fairly traceable to the defendant's conduct and that would be redressed by a favorable judicial decision." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 396 (5th Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "When a court evaluates a facial attack to jurisdiction, it must 'look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands.'" *Lifesize, Inc. v. Chimene*, No. 1:16-CV-1109-RP, 2017 WL 1532609, at *5 (W.D. Tex. Apr. 26, 2017) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

Here, as Plaintiffs are the parties who assert jurisdiction, they bear the burden of proving jurisdiction exists. *Ramming*, 281 F.3d at 161. Plaintiffs collectively assert they have standing to bring this action against Player. (Dkt. No. 53 at 22.) Plaintiffs explain that Player signed an employment agreement with Victory Packaging and a confidentiality agreement and policy acknowledgement with WestRock. (*Id.*) The confidentiality agreement bears a provision that

details its application to any subsidiary, affiliate, division, or joint venture. (*Id.* at 23.) Victory Mexico is an affiliate of WestRock. (*Id.*) Plaintiffs argue that Player's conduct breached both contracts, thus his breach applies to each company and its implicated affiliate. (*Id.* at 17.)

Player's standing argument largely mirrors his argument for the Motion for a More Definite Statement. (Dkt. No. 44 at 3.) Player questions the validity of his employment contracts and any breach of duty connected with those contracts. (*Id.*) The employment contracts are central to Plaintiffs' claims. The validity of and parties' privity to each are inappropriate for resolution in a 12(b)(1) motion because they go to the merits of the claims. *See Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004) (finding that the issue of *respondeat superior* was central to plaintiffs' negligence claim and inappropriate for resolution under Rule 12(b)(1)). "While the question of whether a party is entitled to sue on a contract is often informally referred to as a question of 'standing,' it is not truly a standing issue because it does not affect the jurisdiction of the court; it is, instead, a decision on the merits." *Lifesize, Inc.*, 2017 WL 1532609, at *5 (quoting *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 651 (Tex. App.—Dallas 2013, pet. denied) (applying Texas law)). Taking Plaintiffs' allegations as true, they have sufficiently established the likelihood that privity exists between Player and the three named entities. There can plausibly be a breach between the parties causing an injury that is fairly traceable to Player's conduct.

Next, Player argues that because Plaintiffs failed to identify who owned the alleged trade secrets, they fail to assert standing under DTSA and TUTSA.[3] (Dkt. No. 44 at 13.) WestRock

---

[3] Courts in this district commonly analyze DTSA and TUTSA claims together because they "require proof of the same elements." *Vest Safety Med. Servs., LLC v. Arbor Env't, LLC*, No. CV H-20-0812, 2020 WL 4003642 (S.D. Tex. July 15, 2020). "To state a claim under the DTSA, a plaintiff must allege: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce." *CTCOA, LLC v. NSL Holdings, Inc.*, No. 4:22-CV-03297, 2022 WL 19978294, at *1 (S.D. Tex.

identified its confidential information and trade secrets that were supplied to Player for use in his job. (Dkt. No. 32 at ¶¶ 51–52.) Player takes issue that the trade secrets are not more specifically plead, however, "the idea that a plaintiff must disclose detailed descriptions of trade secrets in a public complaint . . . would likely defeat the entire purpose of attempting to protect those trade secrets in the first place." *Bureau Veritas Commodities & Trade, Inc.*, 2022 WL 912781, at *7. Ownership of the trade secrets, what the trade secrets were, providing the information to Player, and Player's improper use of the information are plausibly established. Plaintiffs have sufficiently established standing.

Last, Player asserts that Plaintiffs lack standing because they have not asserted what entity possessed the business relationship he allegedly interfered with. (Dkt. No. 44 at 13–14.) Plaintiffs argue that the relationships which Player interfered belong to WestRock doing business through Victory Packaging and Victory Mexico, thus belong to all three entities. (Dkt. No. 53 at 19.) Player does not argue that this is implausible or improper and does not cite case law which instructs that it defeats standing as to any Plaintiff. Plaintiffs have cited several customer relationships which were directed away from WestRock and its subsidiaries in favor of business with Group O. Plaintiffs have sufficiently asserted standing here. Accordingly, the Court recommends that Player's 12(b)(1) Motion to Dismiss be denied.

## ii.  Motion to Dismiss for Improper Venue

Defendant Player argues that venue is improper under the venue statute and is invalid under state law. (Dkt. No. 44 at 11; Dkt. No. 32-2 at ¶ 22.) Plaintiffs assert that venue is proper in the

---

Sept. 30, 2022) (citing 18 U.S.C. § 1836). "Under Texas law, the elements of misappropriation of trade secrets are: (1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 772 (S.D. Tex. Aug. 17, 2010).

Southern District of Texas because Player agreed to it by signing his employment agreement; it is where Victory Packaging's trade secrets are located; alternatively, Player is subject to personal jurisdiction and therefore the fallback statutory provision applies. (Dkt. No. 53 at 4.) Specifically, Plaintiffs assert that, because all claims arise out of Player's breach of obligations and duties under his employment agreement, the agreed to venue should apply. (*Id.* at 5.)

"Federal law governs the enforceability of forum selection clauses in this circuit." *A-76 Techs.*, 2021 WL 6202654, at *3; *see also MaxEn Cap., LLC v. Sutherland*, No. CIV.A.H-08-3590, 2009 WL 936895, at *3 (S.D. Tex. Apr. 3, 2009) ("Federal law applies to the enforceability of forum selection clauses, whether jurisdiction be based on diversity, federal question, or a combination of the two."); *Haynsworth v. The Corp.,* 121 F.3d 956, 962 (5th Cir. 1997). A forum selection clause "is mandatory if the language clearly demonstrates the 'parties' intent to make [the forum] exclusive.'" *MaxEn Cap., LLC*, 2009 WL 936895, at *3 (S.D. Tex. Apr. 3, 2009) (citing *City of New Orleans v. Municipal Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004)). "There is quite a high burden of persuasion on the party seeking to avoid enforcement of the [forum selection clause].'" *Lifechek Holdings, Ltd v. Pharm House Drug, Inc.*, No. 4:19-CV-02742, 2019 WL 13169721, at *2 (S.D. Tex. Nov. 15, 2019) (quoting *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016)) (alterations in original). Player has not offered any argument to this effect, and likely cannot meet this high burden.

The employment agreement between Victory Packaging and Player, effective April 1, 2014, provides in part:

> 22. Choice of Law and Forum. This Agreement, which may be executed in multiple original copies, shall be governed by and construed in accordance with the laws of the State of Texas without regard to conflicts of law principles. Claims arising out of or requiring the interpretation of this Agreement shall be brought and litigated exclusively in the courts located within Harris County, Texas, or, if a federal court, the United States District Court for the Southern District of Texas, Houston

> Division, and Salesperson unconditionally consents and submits to the jurisdiction of such courts.

(Dkt. No. 32 at Ex. B.) The words "shall be brought" are a simple but clear limitation that not only permits Harris County, Texas or the United States District Court for the Southern District of Texas, Houston Division to be a forum for the case, but requires it. The clause is mandatory. *See All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008) (holding that even though "the forum-selection clause could be read to permit filing in either state or federal court" it was exclusive and mandatory). Player argues that Texas law governs the forum selection clause's enforceability and under Texas law it is unenforceable. (Dkt. No. 44 at 11.) This is incorrect. "We begin with federal law, not state law, to determine the enforceability of a forum-selection clause." *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008). The Court finds Player's first argument without merit.

Next, Player tries to create distinction between forum and venue selection based on Texas law. (Dkt. No. 44 at 11.) This also fails because the Texas distinction is inapplicable where federal law governs the enforceability of the clause, and the clauses are treated similarly. *All. Health Grp.*, 553 F.3d at 399 ("Although the clause at issue refers to venue, we have previously treated similar clauses as forum-selection clauses."). "It is well-settled [law] that venue is proper in any district agreed to under a forum selection clause." *J.D. Fields & Co. v. Shoring Engineers*, 391 F. Supp. 3d 698, 705 (S.D. Tex. 2019) (quoting *WorldVentures Holdings, LLC v. MaVie*, No. 4:18-CV-393, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018)). Player argues that the Court should not presume the agreement is enforceable, however, again this is incorrect. When deciding a Rule 12(b)(3) motion, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co.*, 240 F. App'x at 615. Player does not

sufficiently call the employment agreement into question to overcome the necessary presumptions in favor of Plaintiffs. These arguments are also without merit.

Last, Player asserts that the clause is unreasonable or unjust because Player does not live in the Southern District and testifying witnesses would come from elsewhere. (Dkt. No. 44 at 12.) In the Fifth Circuit a forum-selection clause is "potentially" unreasonable if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991), *and*, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13, 15 (1972)). Player has failed to carry his heavy burden of showing that the forum-selection clause is unreasonable. Player only cursorily addresses two of the four *Haynsworth* factors and does so unconvincingly. Not living in the district is not tantamount to grave inconvenience or unfairness. This argument is also without merit.

The Court need not conduct traditional venue analyses when the parties have consented to litigation in a given forum. Accordingly, the Court recommends that Player's 12(b)(3) Motion to Dismiss be denied.[4]

### iii.  Motion for More Definite Statement

Defendant Player argues it is not capable of mounting an adequate defense because of the ambiguity in Plaintiffs' FAC. (Dkt. No. 44 at 3.) Specifically, Player argues the FAC is missing

---

[4] Defendant Player joins Group O's Motion to Dismiss for *Forum Non Convenines*. Because Player does not make a separate argument, all parties will be collectively addressed in Sec. III.b.ii. (Dkt. No. 59 at 5.)

what entity employed him, the basis for alleged fiduciary relationship on non-contractual claims, and evidence of consideration to support Plaintiffs' contractual claims. (*Id.*) Yet Player also acknowledges that Plaintiffs "judicially admitted that two of the Plaintiff entities—WestRock and Victory Mexico—were not the employers of Defendant Player." (*Id.* at 13.) Player further acknowledges the employment agreement with WestRock containing the confidentiality provisions. (*Id.* at 5.) If Player was able to ascertain these details, then the FAC is not so unintelligible that it requires a more definite statement about his employer or employment relationships. *See Louis Vuitton Malletier S.A.S. v. Sandra Ling Designs, Inc.*, No. 4:21-CV-352, 2021 WL 3742024, at *2 (S.D. Tex. Aug. 24, 2021) (explaining that "a motion for more definite statement is generally disfavored and is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail"). "Where matters can be clarified and developed during discovery . . . a motion should not be granted." *Veritas Commodities & Trade, Inc. v. Cotecna Inspection SA*, No. 4:21-CV-00622, 2022 WL 912781, at *3 (S.D. Tex. Mar. 29, 2022) (quoting *Ross v. Texas*, No. H-10-2008, 2011 WL 5978029, at *7 (S.D. Tex. Nov. 29, 2011)).

Next, Player claims it is unclear what the basis of the fiduciary relationship is between he and Victory Packaging, WestRock, or Victory Mexico. "For a breach of fiduciary duty claim, a plaintiff must show (1) a fiduciary relationship between the plaintiff and the defendant, (2) a breach by the defendant of his fiduciary duty, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach." *E & E Serv. & Supply, Inc. v. Ruddick*, No. 11-14-00055-CV, 2016 WL 3941079, at *4 (Tex. App. July 14, 2016). A fiduciary relationship can arise from formal or informal relationships. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "[A] formal fiduciary relationship[] 'arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint

venturers.'" *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). "[A] fiduciary relationship 'exists where a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" *Belliveau v. Barco, Inc.*, 987 F.3d 122, 132–33 (5th Cir. 2021) (quoting *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 809 (5th Cir. 2017)).

The FAC alleges three bases for a fiduciary relationship: (1) Player's employment as a sales account executive for Victory Packaging; (2) Player's responsibility for carrying out sales as an agent for Victory Packaging; and (3) Player's receipt of trade secrets and confidential information detailed in his employment agreement. (Dkt. No. 32 at ¶¶ 8, 9, 49, 51–53, 112–19.) *See, e.g.*, *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762 (Tex. App.—Houston [1st Dist.] 2017) (recognizing a breach of a fiduciary duty by an employee against an employer in Texas with certain limitations) (collecting cases); *Trench Tech Int'l, Inc. v. Tech Con Trenching, Inc.*, No. 4:19-CV-00201-O, 2022 WL 1998466, at *12 (N.D. Tex. June 6, 2022) (explaining entity formation does not preclude a finding that defendant owed a duty to its former employer's affiliates); *Daniel v. Falcon Int. Realty Corp.*, 190 S.W.3d 177, 185 (Tex. App.—Houston [1st Dist.] 2005) (quoting *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) ("The agreement to act on behalf of the principal causes the agent to be a fiduciary, that is, a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.")); *In re Associated Indep. Marketers Inc. of Am.*, 1 F.3d 1237 (5th Cir. 1993) ("Texas courts have long recognized that entrustment of trade secrets gives rise to a fiduciary relationship."). The attachments in the FAC provides Player sufficient notice of the factual allegations for breach of fiduciary duty against him. The five listed examples specific to

the breach and the several customer emails are neither "unintelligible" or "vague and ambiguous" allegations of a breach. FED. R. CIV. P. 12(e). The allegations of funneling business to Group O as evidenced through the attached emails is a clear allegation of injury. A more definite statement is not warranted here.

Last, Player contends a more definite statement regarding consideration is necessary. (Dkt. No. 44 at 2, 3, 12.) This argument is unsupported by caselaw, cursory in nature, and without merit. Consideration is specifically mentioned in Player's signed employment agreement with Victory Packaging. (Dkt. No. 32-2 at 1.) Several paragraphs within the agreement refer back to a paragraph which contains an unequivocal statement of consideration. A more definite statement on consideration is not warranted. The Court recommends Player's Motion for a More Definite Statement be denied because the FAC is neither "unintelligible" nor "vague and ambiguous."

### b.  Defendants Group O and Group O Mexico

Defendants Group O bring a Motion to Dismiss for lack of personal jurisdiction, *forum non conveniens*, and failure to state a claim. (Dkt. No. 46 at 1.)

### i.  Motion to Dismiss for Lack of Personal Jurisdiction

"When a district court rules on a Rule 12(b)(2) motion without a hearing, as is the case here, the plaintiff must make a prima facie showing of jurisdiction." *Nguyen v. Phu Nguyen*, No. 19-CV-2229, 2020 WL 709328, at *3 (S.D. Tex. Feb. 12, 2020). "[P]roof by a preponderance of the evidence is not required." *Logan Int'l Inc. v. 1556311 Alberta Ltd.*, 929 F. Supp. 2d 625, 630 (S.D. Tex. 2012); *see Marin v. Michelin N. Am., Inc.*, No. 16-CV-497, 2017 WL 5505323, at *4 (W.D. Tex. Sept. 26, 2017) (collecting cases). "In deciding whether personal jurisdiction exists, the district court may receive any combination of the recognized methods of discovery, including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis." *Air Tropiques,*

*Sprl v. N. & W. Ins. Co.*, No. CIV.A. H-13-1438, 2014 WL 1323046, at *7 (S.D. Tex. Mar. 31, 2014); *Little v. SKF Sverige AB*, No. H–13–cv–1760, 2014 WL 710941, at *3 (S.D. Tex. Feb. 24, 2014)). "But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F. 3d 235, 241 (5th Cir. 2008).

In evaluating personal jurisdiction over the Group O Defendants, the Court first examines whether an agency relationship exists between the alleged Dylan Group employees and the Group O Defendants such that the individuals' actions can be imputed to both entities. The Court next examines whether Holzwarth, Kelly, and Macias's actions on behalf of Group O Defendants constitute minimum contacts with Texas and give rise to the specific claims asserted in this case. The Court finds that Plaintiffs have made a prima facie showing as to each of these inquiries and has thus established personal jurisdiction over Group O and Group O Mexico.

"[T]he actions of an agent may establish minimum contacts over a principal" sufficient for specific personal jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009); *see also Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). A plaintiff must make a *prima facie* showing that an agency relationship exists such that the agent has actual or apparent authority to act on behalf of the principal. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869–70 (5th Cir. 2000) (requiring plaintiff to make a *prima facie* showing as to agency when the court did not hold an evidentiary hearing). "A principal is liable for its agent's acts when the agent has actual or apparent authority to commit those acts, or when the principal ratifies them." *Schrum v. Land*, 12 F. Supp. 2d 576, 582 (S.D. Tex. 1997) (citing *Spring Garden 79U, Inc. v. Stewart Title Co.*, 874 S.W.2d 945, 948 (Tex. App.—Houston [1 Dist.] 1994, no writ)). Under Texas law, agency exists

when "the principal has both the right: (1) to assign the agent's task; and (2) to *control* the means and details of the process by which the agent will accomplish that task." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) (quotations omitted). "The party asserting the apparent agency must prove that the principal, by its conduct, caused the party to reasonably believe that the putative agent was an agent of the principal, and that the party justifiably relied on the appearance of agency." *Townsend v. Goodyear Tire & Rubber Co.*, 481 F. Supp. 2d 610, 619 (N.D. Tex. Mar. 27, 2007), *aff'd*, 249 F. App'x 327 (5th Cir. 2007). "[A]n agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 632–33 (5th Cir. 2015) (quotations and alterations omitted).

Plaintiffs allege that Player, Holzwarth, Kelly, and Macias acted as Group O Mexico and Group O's actual or apparent agents when "double dealing." (Dkt. No. 60 at 11.) Group O Defendants assert that Player, Holzwarth, Kelly, and Macias are Dylan Group employees, of which, Group O Defendants have no control over, do not institute their policies, do not share management, and do not instruct day-to-day operations. (Dkt. No. 46 Ex. 3.) When making the determination of apparent authority, "only the conduct of the principal is relevant." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). First, Group O's conduct demonstrates its efforts to have Group O Mexico and Dylan Group employees' activities associated with it as a division of the parent company through emails, social media posts, and press releases. Group O refers to Group O Mexico as the Mexico-based Analitica division or team, and refers to the Iowa, Illinois, and Michigan based individuals as Group O's U.S. based employees. (Dkt. No. 60 at Ex. 7, 13.) When looking at how Group O refers to the employees as either Mexico-based or U.S.-based, it is reasonable to assume regardless of where the employees are based, they are all under Group O's

control. The words "team," "division," or "based" reasonably implies being part of and under the direction of the parent company, Group O. (*Id.*)

This is consistent with how Group O refers to its "Supply Chain division" based in the U.S. and its Analitica division based in Mexico, where U.S. employees refer to "Mexico-based" colleagues. (*Id.* at Ex. 13.) Employees within Group O view the Analitica team as an extension of Group O. (*Id.*) Group O's public communications claim the Analitica team, which includes Player, Holzwarth, Kelly, and Macias in the same way Group O recognized its other employees. (*Id.* at Exs. 2, 3, 4, 5, 7, 8.) *See Sanders Oil & Gas GP, LLC v. Ridgeway Elec.*, 479 S.W.3d 293, 302 (Tex. App.—El Paso 2015, no pet.) ("We are required to consider the principal's acts of participation, knowledge, or acquiescence because the alleged agent's declarations of authority, without more, do not establish either the existence or scope of the alleged authority."). Further, Group O shared that it continued to grow with multiple featured photographs of the Analitica team including the Dylan Group employees. (*Id.* at Ex. 8.) The Group O logo and website are prominently displayed on the picture. (*Id.*) Group O's conduct is rife with communication examples to third parties which show those individuals acted for Group O Mexico and Group O.

Second, Group O issued public statements on its Twitter page recognizing Macias as a Group O employee for over two years. (*Id.* at Ex. 2, 3.) Group O, on one hand, identifies Macias as an Engineer at Group O Analitica, while also again identifying him as a Group O employee. (*Id.* at Exs. 2, 3.) There is no mention of Dylan Group, but the page does clearly claim to the public that Macias is Group O's employee in the Analitica division. (*Id.* at Exs. 2, 3.) Bob Marriott, Defendants' declarant, who asserts Group O has no association with the individuals, digitally affirmed the Twitter post that claimed Macias as a Group O employee by "liking" the post. (*Id.* at Ex. 4.) Holzwarth, Kelly, and Player are labeled as part of Group O's Analitica Division and Group

O's "Mexico-based team" with an accompanying picture on Group O's Twitter, which was also "liked" by Marriott. (*Id.* at Ex. 5, 6.) The emails used when the individuals conducted the business in question are Group O emails, not Group O Mexico, or even Dylan Group.[5] (Dkt. Nos. 32-2, 32-4, 32-5; 60 at Ex. 1.) Group O claimed these employees' actions as associated with Group O Mexico.

Third, Macias holds himself out as Business Development for Group O Analitica in an email chain with Player and customers using Group O email. (*Id.* at Ex. 1, 3.) Holzwarth holds himself out as President of Group O Mexico and Kelly identifies his role as International Business Development for Group O Analitica in an email chain to customers. (*Id.* at Ex. 1, Dkt. No. 32-3 at 2.) The individuals made it appear they were speaking and dealing on behalf of Group O's Analitica division in emails and held themselves out as Group O representatives in their public facing profiles. (Dkt. No. 60 at Exs. 9, 10, 11, 12.) There is no evidence to suggest that Group O has sought removal of the public facing affiliation with these individuals nor sought a correction showing Dylan Group as their employer.[6]

Any reasonably prudent person would believe these individuals were acting on the behalf of Group O Mexico and that the Group O Mexico individuals acted on behalf of Group O. *Protect Env't Servs., Inc. v. Norco Corp.*, 403 S.W.3d 532, 540 (Tex. App.—El Paso 2013, pet. denied) (clarifying that "apparent authority arises when a principal intentionally or negligently induces parties to believe that a person is the principal's agent although the principal has not conferred any authority on that person"). Group O has publicly affiliated itself with the "division" or "team" and

---

[5] Group O Defendants argue that they are not responsible for Mexican sales and its customers, but that instead they are Dylan Group's responsibility. (Dkt. No. 46 at 4.) It also asserts that Group O Mexico solely provides administrative support to Dylan Group. (*Id.* at 6.)

[6] Defendants do not point to evidence that shows Dylan Group actually directed any of the individual's activities as it related to the business transactions at issue or otherwise.

with the individuals, including Player, who simultaneously acted as an agent for both Group O and Victory Packaging. (Dkt. No. 32-4.) At this stage of the proceedings, this at least implies that Group O allowed the Analitica team to engage in business dealings on its behalf which included Macias, Holzwarth, and Kelly. A reasonably prudent person using diligence and discretion to ascertain the individual's authority after seeing Group O's public facing posts, seeing the employees' Group O distributed email handle, and the employees' signature blocks would assume they had authority to act on behalf of Group O and Group O Analitica. *See, e.g.*, *Stripling*, 234 F.3d at 870–71 (resolving all factual conflicts in favor of plaintiff in the context of agency and personal jurisdiction); *Phoenix Mining & Min., L.L.C. v. Treasury Oil Corp.*, No. 06-CV-58, 2007 WL 951866, at *8 (S.D. Tex. Mar. 28, 2007) (finding plaintiff made a prima facie showing of apparent agency when the agent used business cards, email addresses, and email signature blocks with the principal's name, among other reasons, and the principal did not exercise ordinary care to avoid the appearance that the agent acted on its behalf); *First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466, 471 (Tex. 2004) (explaining "apparent authority must be based on the acts of the principal" and "is limited to the scope of responsibility that is apparently authorized"). The Court finds that the individuals acted as agents with apparent authority for both Group O and Group O Mexico.

Next, the Court turns to whether the individual's conduct on behalf of both Group O Defendants is sufficient to establish minimum contacts and whether Plaintiffs' claims arise out of those contacts. Specific jurisdiction is a claim-specific inquiry. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "A forum [s]tate's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Trois*, 882 F.3d at 490 (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). "The

proper focus of the 'minimum contacts' inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 291 (citing *Calder v. Jones*, 465 U.S. 783, 788 (1984) (internal quotations omitted)).

It is undisputed that Player is a Texas resident and former employee of Houston, Texas-based Victory Packaging. Plaintiffs contend that Defendants created the necessary contacts with Texas when Macias, Holzwarth, and Kelly participated in various email communications with Player where business was purposefully directed away from Houston-based Victory Packaging to Mexico based Group O. (Dkt. No. 60 at 5; Dkt. No. 32 at ¶¶ 2, 17, 19, 57, 60, 62, 131.) *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) ("When a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state . . . to exercise personal adjudicative jurisdiction."). Plaintiffs assert that their claims of tortious interference with an existing and prospective business relationship, knowing participation in a breach of fiduciary duty, and violations under TUTSA and DTSA arise out of those contacts. (Dkt. No. 60 at 6.) "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). "[S]pecific jurisdiction may exist where there are only isolated or sporadic contacts, so long as the plaintiff's claim relates to or arises out of those contacts." *Constenla*, 669 F.3d at 499.

Plaintiffs allege Defendants initiated the collaboration with Player and he then brought Defendants into the fold by sharing his confidential business relationships. What is clear is that Defendants were not passive participants in the customer transactions. Player shared contacts with Kelly, where Kelly actively negotiated with the client. (Dkt. No. 32-3.) Player is described as

representing both Group O and Victory Packaging by another customer. (Dkt. No. 32-4.) Player and Macias are copied on the same email chain where Player was a key driver of specification issues, where he later advised all parties to switch the email chain from his Victory Packaging email to her personal email. (Dkt. No. 32-5.) Macias and Player are referred to as the team handling specification for another customer. (Dkt. No. 32-6.) Macias and Player are both on an email regarding Group O's inventory. (Dkt. No. 32-7.) Plaintiffs allege that Kelly and Holzwarth permitted and encouraged the collaboration between Player and the Group O individuals. (Dkt. No. 32 at ¶ 62.) Plaintiffs conclude, all customers referenced were originally WestRock's customers that Group O and Player collaborated to steer away from Victory Packaging and to Group O. (Dkt. No. 60 at 7.) Defendants' agents were willing participants in directing business obtained from Player in his role with Victory Packaging to Group O.

Plaintiffs allege that Defendants reached out and collaborated with an individual in the forum state, availed themselves of the business relationships he gleaned from being employed in the forum state, and this litigation now arises out of that action. Group O and Group O Mexico should have reasonably anticipated being hailed into a Texas court as a result of their agents reaching out to a Texas-based sales representative, collaborating with him, and steering business contacts obtained from his current Texas-based employer to them. Defendants have requisite minimum contacts with Texas. *See Small Ventures USA, L.P. v. Rizvi Traverse Mgmt., LLC*, No. 11-CV-3072, 2012 WL 4621130, at *5 (S.D. Tex. Oct. 2, 2012) (finding defendants' phone calls and emails to Texas company in which they made false representations and concealed material facts sufficient to confer personal jurisdiction). As Defendants only argue a lack of contacts, and do not argue the exercise of personal jurisdiction would offend traditional notions of fair play and

substantial justice, the Court finds it has personal jurisdiction over Group O and Group O Mexico. The Court recommends denying Defendants' Motion to Mismiss for a lack of personal jurisdiction.

### ii.  Motion to Dismiss under *Forum Non Conveniens*

Under the doctrine of *forum non conveniens*, "a federal district court may dismiss an action if a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co.*, 549 U.S. at 422. A defendant invoking *forum non conveniens* bears a heavy burden in opposing the plaintiff's choice of forum. *Id.* at 430. "[D]epriving the plaintiff of his chosen forum is an exceptional outcome, only appropriate when the balance is strongly in favor of the defendant," and plaintiff's choice should not be disturbed "except upon a clear showing of facts which establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience." *Indusoft, Inc. v. Taccolini*, 560 F. App'x 245, 248 (5th Cir. 2014) (quotations and alterations omitted). This is especially true when a plaintiff has chosen to sue in its home forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). "The *forum non conveniens* determination is committed to the sound discretion of the trial court." *Id.* at 257.

To determine whether dismissal is proper under this analysis, a court must first find that an adequate and available alternative forum exists for the parties to litigate the dispute. *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211 (5th Cir. 2010). If such a forum exists, then the court must "weigh various private and public interest factors to determine whether dismissal is warranted." *Id.* These factors, described below, are "by no means exhaustive, and some factors may not be relevant in the context of a particular case." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528–29 (1988). Analysis of these factors is not a straight balancing test and dismissal under the doctrine is "only appropriate when the balance is strongly in favor of the defendant." *Indusoft, Inc.*, 560 F. App'x at 248 (quotations omitted).

Group O Defendants, Player, and Dylan Group seek dismissal in favor of trial in Mexico. (Dkt. No. 44 at 14–21; Dkt. No. 49 at 11; Dkt. No. 59 at 5.) Plaintiffs filed suit here in the Southern District of Texas as the home forum of Victory Packaging. (Dkt. No. 1.) All Defendants have consented to the jurisdiction of the Mexican courts, making it an adequate alternative forum. *Morales v. Ford Motor Co.*, 313 F. Supp. 2d 672, 675 (S.D. Tex. 2004) (citing *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002) ("It is undisputed that Mexico is an amenable forum because the defendants have agreed to submit to the jurisdiction of the Mexican courts."), and *Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) ("We hold instead that defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of *forum non conveniens* analysis.")).

Next, the Court moves to balancing the private factors. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (3) probability of an opportunity to view the premises, if view would be appropriate to the action; and (4) other factors affecting the ease, speed, and expense of trial or the enforceability of a judgment if obtained." *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 835–36 (5th Cir. 1993). "If these factors counsel dismissal, then the court need not proceed further" and may dismiss the case. *Morales*, 313 F. Supp. 2d at 674.

Under the first factor, Defendants argue that ease of access to evidence supports dismissal because the conduct substantially occurred in Mexico, the declaration of the VP of Sales for Victory Mexico is an essential piece of evidence, other evidence includes Spanish emails, and Plaintiffs have ties to Mexico. (Dkt. No. 46 at 16.) Plaintiffs assert key identified witnesses, including Player, Kelly, Group O's two declarants, and Victory Packaging personnel, reside in the

United States. (Dkt. No. 60 at 16.) Next, Plaintiffs allege the document evidence required will come from emails using the shared domain of all Group O affiliated individuals, from Victory's emails which are hosted in Houston, Google email accounts which are not hosted in Mexico, or LinkedIn accounts which are also not hosted in Mexico. (*Id.* at 17.) Next, Plaintiffs show the majority of exhibits submitted are in English concerning U.S. based parties, and not Spanish, as implied by Defendants. (*Id.*) Plaintiffs assert that the pertinent evidence to prove their case is located in the U.S., while Defendants have not identified any physical evidence that may be at issue nor the location of that evidence. (*Id.*) This factor weighs against dismissal.

Under the second factor, Defendants argue that the availability of compulsory process for witnesses weighs in favor of dismissal. (Dkt. No. 46 at 17.) Yet, Defendants do not identify anyone who is essential and unavailable or unwilling to testify. Defendants, similarly, do not assert that Mexico has the compulsory processes necessary to secure the attendance of unwilling witnesses. *Nat'l Oil Well Varco, L.P. v. Sadagopan*, No. CV H-16-2261, 2017 WL 2957908, *8 (S.D. Tex. July 11, 2017) (finding factor weighed against defendant where it did not show Dubai had compulsory process and majority of witnesses are subject to process or located in the United States). This factor weighs against dismissal.

Next, Defendants assert that the cost of witness attendance weighs in favor of dismissal. (Dkt. No. 46 at 18.) Defendants argue that Macis, Holzwarth, and any other Dylan Group employee reside or work in Mexico and would have to travel to Houston for trial. (*Id.*) Plaintiffs show that cross border business travel is a regular occurrence for Group O employees. (Dkt. No. 60 at 18.) Plaintiffs further show the travel has not been burdensome for Group O when they brought together employees from the Iowa, Illinois, Michigan, and Juarez Mexico teams. (*Id.*) While there will be costs associated with litigation in Texas, Defendants make no effort to show it will be less costly

in Mexico. Plaintiffs assert at least four witnesses in the U.S. while Defendants assert only two, which shows the cost of travel would be more to Mexico. *Reyna-Leyva v. Pesquera*, No. 2:16-CV-35, 2016 WL 6812938, at *2 (S.D. Tex. Aug. 24, 2016) ("Defendant employers can compel current employees to attend trial in far-flung locations."). This factor weighs against dismissal.

Next, Defendants assert that because witnesses are Spanish speaking, they will need to testify in Spanish and require an interpreter for testimony and for documents to be translated. (Dkt. No. 46 at 18.) Defendants give no support for the idea that the witnesses who work for their international company do not know English, would not be able to testify in English, or that the Southern District of Texas lacks experience in handling witnesses who in fact only speak Spanish. This factor weighs against dismissal.

Last, Defendants do not point to other evidence which would make Plaintiffs' choice of forum unnecessarily burdensome. A plaintiff's choice of forum is normally given great weight, and the Court sees no reason to deviate from its choice. Defendants have failed to meet their burden to show private interest factors weigh in favor of dismissal.

"[I]f the private interest factors do not weigh in favor of dismissal, then the court proceeds to examine a series of public interest factors." *Morales*, 313 F. Supp. 2d at 674. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in the forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Baumgart*, 981 F.2d at 837 n.14. "If these factors weigh in the moving party's favor, the district court may dismiss the case." *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002).

First, Defendants argue that the court's congestion weighs in favor of dismissal. (Dkt. No. 46 at 20.) Defendants support this contention by noting the Southern District of Texas is congested. (*Id.*) Yet, Defendants provide no explanation of the preferred Mexican Court's congestion, what if anything is impacting the congestion of the court to date, or if the same factors that applied in the cited case law also apply here. This favor weighs against dismissal.

Second, Defendants argue that local interests weigh in favor of dismissal because Mexico has the greatest interest in resolving the dispute. (*Id.*) Plaintiffs contend the local interests are best served in the Southern District because their claims are based on a Houston company wrongfully losing business. (Dkt. No. 60 at 20.) Defendants fail to show how Mexico has a greater interest when it is a Texas resident who allegedly directed business away from a Texas based company. This factor weighs against dismissal.

Third, Defendants assert that Mexico is more familiar with the law and potential conflict of law. (Dkt. No. 46 at 20.) Defendants assert that Mexican law governs Plaintiffs' claims. (*Id.*) Plaintiffs contend Texas law applies, any conflict would be resolved in favor of Texas law, and even if Mexican law controlled, Defendants have not shown the Court would be unable to apply the law. (Dkt. No. 60 at 20.) While this case may encompass Mexican law, Defendants only assert that it is a likelihood, and Plaintiffs make no reference to Mexican law in their claims. This factor does not weigh in favor of dismissal.

Fourth, Defendants assert the burdens on jurors weighs in favor of dismissal because it only has a limited connection to the local community. (Dkt. No. 46 at 20.) Plaintiffs contend that Houston-based jurors would have an interest in a Houston-based company losing existing and prospective business. (Dkt. No. 60 at 20.) This factor does not weigh in favor of dismissal.

While Defendants have all submitted to jurisdiction in Mexico, Defendants have not demonstrated that the balance of factors weighs strongly in favor of Mexico. *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 221–22 (5th Cir. 2009) (finding the district court did not abuse its discretion in denying dismissal when there were witnesses in both forums, translation of documents would be inevitable in either forum, many of defendant's witnesses spoke English, the events giving rise to the suit took place in Texas, and federal courts can apply foreign law if necessary). The case should remain in the Southern District of Texas. The Court recommends denying the Motion to Dismiss under *forum non conveniens.*

### iii.   Motion to Dismiss for Failure to State a Claim

Defendants bring a Motion to Dismiss for Failure to State a Claim because Plaintiffs fail to plead Mexican law, engage in improper group pleading, fail to properly plead trade secrets, and fail to plead tortious interference. (Dkt. No. 46 at 21–25.)

Plaintiffs assert tort and contract claims and refer to federal and Texas law in stating these claims. (Dkt. No. 32.) Defendant argues that because the case involves alleged conduct in Mexico by Mexican parties, affecting Mexican customers and businesses, there is no doubt that Mexican law governs Plaintiffs' claims. (Dkt. No. 46 at 21.) Defendants, however, do not cite controlling authority that instructs a case should be dismissed for failure to state a claim based on a failure to plead foreign law. *See, e.g.*, Dkt. No. 46 at 21 (citing *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986 (S.D. Tex. 2004) (explaining where the parties' contract contained a choice of law clause designating Mexican law, but Texas law was pleaded, Mexican law applied to all contract and tort claims; the court granted plaintiff's motion to amend and denied defendants motion to dismiss for failure to plead Mexican law); *Vexol, S.A. de C.V. v. Berry Plastics Corp.*, 882 F.3d 633 (7th Cir. 2018) (explaining Indiana law required Mexican law to be plead because

that was the location of the alleged wrongs; affirming the dismissal for failure to state a claim because the plaintiff failed to plead certain claims with specificity under Rule 9(b) and failed to plead an act the defendant took in Mexico); *Trafigura Beheer B.V. v. M/T PROBO ELK*, 266 F. App'x 309 (5th Cir. 2007) (affirming the dismissal of admiralty case for improper venue where the parties' charter party contract contained a forum selection clause); *Walton v. Arabian Am. Oil Co.*, 233 F.2d 541 (2d Cir. 1956) (remanding with directions to permit the parties to present material to assist the trial judge to ascertain the applicable 'law' of Saudi-Arabia, where neither party alleged the pertinent Saudi Arabian law, nor proved such law at trial, nor offered to prove it at trial). Defendant contention is unsupported.

Defendants seem to request the application of foreign law; however, they do not carry their burden to show there is a conflict of law between Mexico and Texas warranting the application of Mexican law here. "The Fifth Circuit has held that 'if the laws of the states do not conflict, then no choice-of-law analysis is necessary' and the court should apply the law of the forum state." *Kronoz Internacional, S.A. v. Alvarez*, No. CV 4:13-1262, 2015 WL 12570831, at \*6 (S.D. Tex. Mar. 10, 2015); *see Urb. Oaks Builders LLC v. Gemini Ins. Co.*, No. 4:19-CV-4211, 2021 WL 4440322, at \*2 (S.D. Tex. June 17, 2021) ("Courts sitting in Texas presume Texas law applies unless a party seeking to apply the law of another interested state shows that it conflicts with Texas law."); *see also Petrie v. Novelis Corp.*, No. 4:18CV4522, 2021 WL 4164137, at \*1 (S.D. Tex. June 21, 2021) ("The party seeking to apply foreign law bears the burden to show a conflict in the law of two of more states before the Court will conduct a choice of law analysis."). In light of Plaintiffs' assertion in their FAC that the claims arise from conduct in Texas, by Texas residents in collaboration with individuals in Texas and Mexico, involving business obtained from a Texas

company, and Defendants' failure to support its assertion Mexican law applies, the Court finds this argument inapposite for dismissal.

Next, Defendants assert the claims should be dismissed due to group pleading for collectively asserting claims against Group O and Dylan Group, thereby failing to give Group O notice of the claims against it. (Dkt. No. 46 at 22 citing *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (Jones, J., dissenting) (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 & n.14 (11th Cir. 2015)). Plaintiffs' collective references to the Group O entities are defined in the FAC. (Dkt. No. 32 at ¶¶ 13, 17, 18.) Plaintiffs' FAC contains sufficient facts to support the inference that Group O and Group O Mexico are responsible for the particular harms caused by Macias, Kelly, and Holzwarth, which Defendants claim are Dylan Group's employees. *Lewis v. City of Houston*, No. 4:22-CV-00844, 2023 WL 2249991, at *3 (S.D. Tex. Feb. 27, 2023) (noting plaintiff impermissibly group plead when she did not specify which defendant her assault claim applied to). Plaintiffs clearly detail what claim pertains to who and why. (Dkt. No. 32 at 23–33.) The Court finds that the collective reference to the three Group O affiliated entities does not fail to give Defendants adequate notice of the claims against it and does not support dismissal.

Next, Defendants assert that Plaintiffs fail to properly plead trade secrets because Mexican packaging industry customers are generally known to all packaging companies and the product specifications the former employees shared were not created by Plaintiffs. (Dkt. No. 46 at 23.) "Since the DTSA and TUTSA are both based on the Uniform Trade Secrets Act, 'a substantial number of provisions in the two statutes—including the definition of 'trade secret'—are either identical or very similar in many respects.'" *Bureau Veritas Commodities & Trade, Inc.*, 2022 WL 912781, at *6 (citing *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 332–33 (E.D. Tex. 2019)). The Court will consider the sufficiency of Plaintiffs' federal and state

trade secret misappropriation claims together. *See, e.g.*, *Vest Safety Med. Servs., LLC v. Arbor Env't, LLC*, No. H-20-0812, 2020 WL 4003642, at *3 (S.D. Tex. July 15, 2020) (consolidating DTSA and TUTSA analysis).

Here, Plaintiffs must allege facts that show that a trade secret existed. *Bureau Veritas Commodities & Trade, Inc.*, 2022 WL 912781, at *6 (citing *GE Betz. Inc. v. Moffitt-Johnston*, 885 F.3d 318, 326 (5th Cir. 2018)). Both statutes define "trade secret" to include all "business, scientific, technical, economic, or engineering information that (1) the owner has taken reasonable measures to keep secret and (2) derives independent economic value from not being generally known or readily ascertainable through proper means." *Id.* (citing 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6)). Whether something is a trade secret is a question of fact. *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 492 (5th Cir. 2016). Texas courts weigh six factors to determine whether a trade secret exists:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Vest Safety Med. Servs., LLC v. Arbor Env't, LLC*, No. CV H-20-0812, 2020 WL 4003642, at *4 (S.D. Tex. July 15, 2020) (citing *GlobeRanger Corp.*, 836 F.3d at 492). Thus, the Court must determine whether Plaintiffs have alleged sufficient facts which, taken as true, would support that trade secrets exists.

Plaintiffs assert the trade secrets for both the DTSA and TUTSA claims are as follows: WestRock's customer communication; compilations of WestRock's customer information, volumes, and contract dates; WestRock's contractual details including terms, pricing, expiration dates, renewal information, tonnage/volume preferences; WestRock's costs, margins, profits,

discounts, and other financial information; WestRock's design drawings, engineering files, and specifications for customer packaging solutions; and WestRock's projections regarding sales, purchases, revenue, profit, and margins. (Dkt. No. 32 at ¶ 52.) WestRock explained how it took reasonable measures to make sure the information was not readily accessible by all in the company where employees had differing levels of access; how individual risk assessments were conducted when an employee gave notice of separation to ascertain the need to reduce early access; that all employees were subject to policies and agreements to ensure the information remained protected; and that the information in question was limited to the individual salesperson and administrative support. (*Id.* at ¶¶ 27–38.)

Defendants take issue with the provided customer lists and packaging specifications. (Dkt. No. 46 at 23.) Yet, this is not all Plaintiffs have pleaded. Plaintiffs' allegations are specific and speak to several factors Texas courts use to assess a trade secret such as limited access, unavailability of information outside the organization and upon separation, whether it formed the foundation of its business, and whether digital security and contractual arrangements kept it confidential. *See Vest Safety Med. Servs.*, 2020 WL 4003642, at *4 (disregarding facts asserted by defendants that were outside the complaint because the court is limited to the well-pleaded allegations contained in the complaint when deciding a Rule 12(b)(6) motion). "Federal courts do not require highly specific pleadings for trade secrets claims because relevant facts are often unavailable before discovery, and the plaintiff must be permitted to plead the claim without destroying the information's secrecy." *Id.* The Court is satisfied that Plaintiffs have met their burden at the pleading stage. Plaintiffs pleading of trade secrets does not warrant dismissal.

Last, Defendants argue that Plaintiffs fail to state a claim for tortious interference with existing and prospective business relationships because Plaintiffs do not allege the existence of a

specific contractual relationship that ended or a prospective relationship that failed. (Dkt. No. 46 at 24.)

"In Texas, the elements of tortious interference with an existing contract are: '(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss.'" *Fcstone Merchant Services, LLC, v. Sgr Energy, Inc., et al*, No. 4:20-CV-3693, 2021 WL 2954190, at *5 (S.D. Tex. July 14, 2021) (citing *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)). "To establish tortious interference with a prospective business relationship, a plaintiff must prove (i) a reasonable probability that the plaintiff would have entered into a business relationship; (ii) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (iii) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (iv) the plaintiff suffered actual harm or damages as a result of the defendant's interference." *Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *4 (S.D. Tex. Oct. 22, 2020) (citing *Smith v. Royal Seating, Ltd.*, 03-09-00114-CV, 2009 WL 3682644, at *3 n.6 (Tex. App.—Austin Nov. 6, 2009, no pet.)).

Plaintiffs identify Customers A, B, and C as customers they had contractual business relationships with, allege that Defendants collaborated with Player to divert those relationships from Plaintiffs to Defendants, and assert this is what caused Plaintiffs injury. (Dkt. No. 32 at ¶¶ 51-52, 142-43.) At the very least, Plaintiffs clearly allege existing contracts with B since 2014-2015, whose orders were reduced or eliminated around 2021 when Player allegedly provided the

customer's information to Group O. (*Id.* at ¶¶ 64–66.) At this stage, Plaintiffs sufficiently pleaded the existence of a contract.

Next, Plaintiffs assert the same Customers A, B, and C, support their claim for interference with prospective business relationships. Plaintiffs assert that because A, B, and C were current customers there is a reasonable probability they would have continued to be customers, and thus enter into business relationships but for Player diverting their business to Group O. (Dkt. No. 60 at 25.) Plaintiffs sufficiently assert that Defendants' actions prevented WestRock from entering into a business relationship with these three clients who instead did business with Defendants. WestRock sufficiently shows, at the very least for Customer B, that there was a reasonable probability that Plaintiffs would have entered into another contract, like they had done for over five years. (Dkt. No. 32 at ¶¶ 64–66.) *See In re Burzynski*, 989 F.2d 733 (5th Cir. 1993) (finding plaintiffs adequately pleaded reasonable probability of a contract when defendants sent letters to thirty-five of plaintiff's clients).

Plaintiffs have sufficiently plead tortious interference with an existing and prospective business relationship. Accordingly, the Court recommends Group O Defendants Motion to Dismiss be denied.

### c.   Defendant Dylan Group

Defendant Dylan Group brings its Motion for a More Definite Statement and Motion to Dismiss for lack of personal jurisdiction, improper venue, and *forum non conveniens*. (Dkt. No. 49.) Plaintiffs allege four claims against Dylan Group including: violating DTSA and TUTSA, knowing participation in breach of fiduciary duty, and tortious interference with existing and prospective business relations. (Dkt. No. 32 at ¶¶ 88–99, 100–12, 128–33, 141–50.)

### i.  Motion for a More Definite Statement

Defendant Dylan Group asserts that Plaintiffs' FAC is insufficient because it contains collective allegations against "Defendants" who are defined to include Group O, Inc., Group O Analitica, and Dylan Group. (Dkt. No. 49 at 3.) "A motion for more definite statement should . . . be used as a remedy for unintelligible pleading, not for correcting a lack of detail." *Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston, Texas*, 260 F. Supp. 3d 738, 757 (S.D. Tex. 2017), *aff'd sub nom. Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 734 F. App'x 916 (5th Cir. 2018). As discussed above, Plaintiffs' FAC is not unintelligible, and they will obtain more detail of the nature and extent of Dylan Group's involvement during discovery. Dylan Group acknowledges that it is the employer of all individual employees in question, and Group O's declaration confirms that the employees conduct business under the Group O name. (Dkt. No. 46-2.) Dylan Group can easily infer from the FAC that any allegation against an employee implicates Dylan Group in tandem with Group O Analitica as two interconnected companies that support the Mexico based business of Group O, Inc. Dylan Group provides the personnel while Group O Analitica supports the personnel. (*Id.* at 2.) The emails sent by Dylan Group employees, on the Group O server, using Group O email addresses underscore the claims against Dylan Group. Accordingly, the Court recommends denying Defendant's motion for a more definite statement because Dylan Group is able to reasonably respond to the FAC. *See, e.g.*, A*BN-AMRO Mortg. Grp., Inc. v. Emerson Manufactured Homes, Ltd.*, No. CIV.A. H-04-1787, 2005 WL 1949601, at *3 (S.D. Tex. Aug. 15, 2005) ("A motion for more definite statement should be denied where the movant is reasonably able to respond to the pleading.")

### ii.   Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiffs assert its claims arise out of Dylan Group's employees purposeful contacts with Player, which constitute minimum contacts sufficient for specific personal jurisdiction. (Dkt. No. 61 at 12.) "Establishing a prima facie case [] requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (finding plaintiffs did not establish minimum contacts where the sole evidence was on information and belief of defendants' contacts to Texas). Defendant assert Plaintiffs have failed to assert personal jurisdiction because its activities took place in Mexico regarding Mexican companies or companies doing business in Mexico, thus it never availed itself of the forum state. (Dkt. No. 49 at 8.) The Court disagrees.

Dylan Group employs Player, Kelly, Macias, and Holzwarth. (Dkt. No. 46-2.) Plaintiffs allege that Dylan Group employees intentionally sought out Player, who was located in Texas and employed by Victory Packaging in Texas, to collaborate on switching customers from Victory to Group O. (Dkt. No. 32 at ¶ 17.) Defendant's employees actively participated in culling customers by using information provided by Player, as thoroughly discussed above. (*Id.* at ¶¶ 2, 17, 62, 131; *see infra* Sec. III.b.i.) Taking Plaintiffs' allegations as true, as the Court must, Holzwarth, Kelly, and Macias purposefully and repeatedly collaborated with Player in Texas to steer business away from Victory and to Group O. It was seemingly a strategic move that Player could provide cross border contacts to grow the business Group O was trying to gain, not a mere happenstance that Player was located in Texas. The actions were purposefully directed at Player, in Texas, where the harm to Player's Texas based employer was likely and foreseeable. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) ("Foreseeable injury alone is not sufficient to confer specific

jurisdiction, absent the direction of specific acts toward the forum.") Plaintiffs have established Dylan Group's minimum contacts with the forum state.

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska, Inc.*, 195 F.3d at 215. "It is rare to say the assertion is unfair after minimum contacts have been shown." *Id.* "In this inquiry we examine five factors: (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (citation and internal quotation omitted).

It is certain that there would be some burden on Dylan Group to defend this case in Texas, however, it is a substantial commercial entity accustomed to cross border dealings that require coordination with individuals in multiple states and countries. Dylan Group employees have shown that international travel is not a significant burden when seeking business, supporting existing inter-company relationships, and attempting to close new business. (Dkt. No. 60 at Exs. 1–10.) Texas has an interest in this dispute as Victory Packaging's home forum, it is the place where its resident was sought out, and he then collaborated with Mexico and Texas based Dylan Group employees engaging on behalf of Group O. Plaintiffs are substantially interested in this forum as exemplified by the forum selection clause in Player's contract, and as a practical matter may not be able to seek relief in Mexico. The interest of efficient administration of justice for resolving the dispute is likely equal between Texas and Mexico, as each party would experience some level of inconvenience, and conflict of law could favor either party depending on what law prevailed. *Fieldwood Energy LLC v. Ocean Marine Contractors, LLC*, No. CV H-14-3694, 2015 WL

13119408, at *14 (S.D. Tex. July 22, 2015) ("A case should not be transferred to a different venue if the transfer merely shifts the inconvenience from Defendants to Plaintiffs.") The Court finds that Dylan Group availed itself of the privilege of doing business in Texas by collaborating with Player and maintaining this action against Dylan Group does not offend traditional notions of fair play and substantial justice. *See Fcstone Merchant Services, LLC*, 2021 WL 2954190, *3. The Court recommends Defendant's Motion to Dismiss for lack of personal jurisdiction be denied.

### iii.   Motion to Dismiss for Improper Venue

Plaintiffs assert venue is proper under 28 U.S.C. § 1391 (b)(2) because Harris County is the location of Player's former employer and the location of the allegedly misappropriated trade secrets; alternatively, it is proper under 28 U.S.C. § 1391 (b)(3) because the Court has personal jurisdiction over Player, a Dylan Group employee, and Dylan Group; and last it is also proper under pendant venue because Dylan Group is joined with its claims against Player because the claims share a common nucleus of operative fact. (Dkt. No. 61 at 5–6.)

Plaintiffs aver that a substantial part of the events giving rise to the claim occurred in Harris County because it is the location of Victory Packaging and Kelly, a Dylan Group employee, is located Harris County and participated in in Player's breach of fiduciary duty. (*Id*. at 6.) Plaintiffs also note that a substantial part of property that is the subject of the action, its trade secrets, are located in Harris County. (*Id.*) Defendant Dylan Group argues that Plaintiffs fail to allege facts that support any of the alleged business activities occurred in the Southern District. (Dkt. No. 49 at 5.) Defendant alleges that because Player's supervisor was located in Mexico and Player's business activities were primarily outside the Southern District with Mexican companies or companies doing business in Mexico, venue cannot be proper. (*Id.* at 5–6.) Defendant further asserts that Kelly's activities did not take place in Houston because he solicits sales in Mexico for

companies doing business in Mexico or Mexican companies. (*Id.* at 6.) "The movant bears the burden of showing improper venue in connection with a motion to dismiss. In meeting this burden, the movant must show facts that will defeat a plaintiff's assertion of venue." *Munoz v. Toyota Motor Corp.*, No. CIV.A. C-11-170, 2011 WL 4000902, at *2 (S.D. Tex. July 20, 2011).

Plaintiffs assert that its central database of clients and other protected trade secrets that Dylan Group allegedly misappropriated through Player and its other employees is located in Houston. (Dkt. No. 61 at 6.) Plaintiffs further assert that much of the information that was protected was developed and generated in Houston. (Dkt. No. 32 at Exs. C–G.) Plaintiffs allege that Kelly participated in recruiting Player, coordinated with Player on the trade secret use, and actively used the trade secrets with the specific purpose of driving business from Victory Packaging to Group O. (*Id.*) Plaintiffs allege that Dylan Group employees assisted Group O in profiting from the use of the information that was housed in Houston. (*Id.*) The Court finds these facts are sufficient to demonstrate that a substantial part of the events or omissions giving rise to the claim, and a substantial part of the property that is subject of the action are within this forum. As such venue is not improper under 28 U.S.C. § 1391 (b)(2). *See, e.g., Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681 (S.D. Tex. 2010) (finding venue proper under § 1391(b)(2) because the information allegedly misappropriated was located and developed in Houston).

Even so, venue is also proper under the doctrine of pendant venue because the claims against Dylan Group arise out of a common nucleus of operative fact that supports the claims against Player and Group O. *See Halcyon Biomed., Inc. v. Glatt Air Tech., Inc.*, No. CV H-19-690, 2019 WL 2420232, at *8 (S.D. Tex. June 10, 2019) (explaining that "[t]he doctrine of pendent venue allows a court to hear an improperly venued claim if it is joined in a suit with a claim that is properly venued, and the claims arise out of a common nucleus of operative fact"). Asserting

pendent venue serves both judicial economy and avoidance of piecemeal litigation here. *Trench Tech Int'l, Inc. v. Tech Con Trenching, Inc.*, No. 4:19-CV-00201-O, 2020 WL 11772529 (N.D. Tex. Mar. 20, 2020). As such, the Court finds venue is proper against Dylan Group in the Southern District of Texas and recommends denying Defendant's Motion to Dismiss for improper venue.

## IV.    SUPPLEMENTAL BRIEFING

Defendants Group O filed supplemental briefing on August 25, 2023. (Dkt. No. 93.) Group O argues that the evidence produced in Plaintiff's jurisdictional discovery shows that Group O did not have any input or control over Dylan Group's hiring of Jason Player. (*Id.* at 1.)

Group O asserts that the Independent Contractor Agreement ("ICA") between Dylan Group and Group O, which allows for Dylan Group to use Group O's name and logo, and its organizational chart supports that this Court does not have jurisdiction. (*Id.* at 2.) Group O asserts that these documents show that the Group O Defendants did not have control over the means and details of the process that Dylan Group employees would accomplish tasks, thus there can be no personal jurisdiction in the agency context. (*Id.* at 4.)[7]

Plaintiffs responded September 15, 2023. (Dkt. No. 97.) Plaintiff asserts that jurisdictional discovery confirms that the Court correctly concluded that Group O Defendants are subject to personal jurisdiction in this Court. (*Id.* at 2.) Plaintiffs assert they have properly alleged an agents with apparent authority relationship between Group O and Mike Holzwarth, Michael Cobane, Sean

---

[7] Alternatively, Group O argues that the hub of activity is in Mexico and the case should be dismissed based on *Forum Non Conveniens*. (Dkt No. 93 at 5.) Group O further extrapolates the arguments made in its original briefing, adding that the emails produced through jurisdictional discovery further support that Spanish to English translation will be required to necessary documents. (*Id.* at 6.) The Court limited briefing to new jurisdictional arguments that arose from the jurisdictional discovery. Therefore the Court limits its analysis to Defendants' jurisdictional arguments.

Kelly, Jorge Macias, and Jason Player such that their action can be imputed to the Group O Defendants. (*Id.*)

Plaintiffs explain that the ICA gave Group O oversight of Jason Player's hiring and authorized the use of Group O's email address, logo, and letterhead. (*Id.* at 4.) Specifically, the ICA grants Group O the right to accept or reject Dylan Group's hires such as Jason Player. (*Id.*) Plaintiffs further explain that the ICA covered the time period when Player worked for both companies and when he was officially hired. (*Id.*) The ICA also shows that Group O controlled the use of the Group O name and identity meaning that Dylan Group employees could only present themselves as Group O with Group O's approval, which they did. (*Id.*) Plaintiffs explain that the documentary evidence confirms Dylan Group is never mentioned by any Group O team members or customers but instead employees exclusively hold themselves out as working on behalf of Group O to customers. (*Id.* at 5.)

Plaintiffs then detail that Jason Player exclusively held himself out as a Group O Analitica employee. (*Id.*) Player explained in a business development slide show that the Group O Analitica headquarters was located at the Group O Illinois campus, and included organizational charts showing Group O's direct role in overseeing business functions of Group O Analtica. (*Id.*) The organizational chart showed Group O Analitica was responsible for operations, sales, client services, purchasing, and other business functions, contradicting Defendants' many assertions otherwise. (*Id.* at 6.) Last, Plaintiffs explain Group O Defendants were unable to make any distinction between Group O Defendants and Dylan Group in discovery nor produce documents that were provided to customers that delineated Dylan Group. (*Id.*)

Plaintiffs further contend that the organizational chart shows that Group O gave Cobane and Holzwarth apparent authority to act as agents of Group O. (*Id.* at 3.) Plaintiffs explain that the

organizational chart underscores that the Dylan Group[8] and Group O Defendants are not entirely separate entities because the president and COO acted in conformity with their titles in dealings with Jason Player. (*Id.*)

The Court finds that at this point in the proceedings, jurisdictional discovery supports Plaintiffs' *prima facie* showing of jurisdiction. *Walk Haydel & Assoc.*, 517 F. 3d at 241 (holding that the plaintiff need only make a *prima facie* showing of minimum contacts to survive a motion to dismiss). Further, the jurisdictional discovery also supports an agent with apparent authority relationship between Group O and Mike Holzwarth, Michael Cobane, Sean Kelly, Jorge Macias, and Jason Player such that their action can be imputed to the Group O Defendants. *See Stripling*, 234 F.3d at 869–70.

The two key documents Group O relies on, the ICA and the organizational chart, supports the Court's conclusion that Plaintiffs have made a sufficient showing of an agency relationship between the Dylan Group employees and the Group O Defendants. Plaintiffs have shown that Group O, through its conduct, caused customers to reasonably believe that Dylan Group employees were agents of Group O, and that customers relied on that representation. *See Townsend*, 481 F. Supp. 2d at 619. Plaintiffs have shown that through the ICA, Group O had control over Dylan Group's use of its outward facing insignia and had control over its hiring and firing practices. This directly implicates the control aspect of the agency relationship that Defendants ardently protest. As such, the Court's conclusion remains consistent with its previously withdrawn Memorandum and Recommendation.

---

[8] Defendants Dylan Group and Jason Player filed briefing on August 30, 2023. (Dkt. No. 95.) Defendants solely address additional *Forum Non Conveniens* arguments. (*Id.*) The arguments made have been addressed above and will not be readdressed by the Court because the supplement does not address new evidence adduced in jurisdictional discovery.

## V.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS:**

(1)    Defendant Player's Motions for a More Definite Statement under Rule 12(e) and Motion to Dismiss under Rules 12(b)(1) and 12(b)(3) (Dkt. No. 44), be **DENIED**;

(2)    Defendant Group O's Motion to Dismiss under *Forum Non Conveniens* and Rules 12(b)(2) and 12(b)(6) (Dkt. No. 46), be **DENIED**; and

(3)    Defendant Dylan Group's Motion for a More Definite Statement under Rule 12(e) and Motion to Dismiss under *Forum Non Conveniens* and under Rules 12(b)(2) and 12(b)(3) (Dkt. No. 49), be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on September 28, 2023.

Sam S. Sheldon
United States Magistrate Judge